## Paul's Estate.

*Collateral inheritance tax—Commonwealth's right thereto not affected by renunciation of legatee—Acts of June 20, 1919, and May 4, 1921.*

Under the Act of June 20, 1919, P. L. 521, direct and collateral inheritance taxes accrue immediately upon decedent's death, and the Commonwealth's right thereto is not affected by a subsequent renunciation of the legacy by the legatee. Hence, where testatrix died after the passage of the Act of May 4, 1921, P. L. 341, and a collateral legatee renounced his legacy, which thereupon fell into the residue, bequeathed to lineal descendants, the Commonwealth is entitled to a tax of 10 per cent. notwithstanding such renunciation.

Appeal from the Register of Will's assessment of inheritance tax.    O. C. Phila. Co., July T., 1921, No. 179.

*R. Sturgis Ingersoll* (representing *Ballard, Spahr, Andrews & Madeira*), for appellant.

*Robert W. Finletter,* for the Register of Wills, respondent.

GEST, J., Dec. 3, 1921.—The facts are as follows: Rebecca Paul died July 7, 1921, leaving a will, dated July 13, 1920, admitted to probate shortly after her death at a date not stated in the pleadings, in which, *inter alia,* she provided:

"Item Three. I direct my Executrix hereinafter named to pay to my son-in-law N. McLean Seabrease the sum of Five Thousand Dollars ($5000) in full for all services rendered by him in the handling of my property, said sum to be accepted by him in full compensation.

"Item Four. All the above legacies shall be paid free and clear of inheritance tax, State or Federal, which shall be borne by my residuary estate."

And by item five she devised and bequeathed her residuary estate, real and personal, to her daughter, Helen P. Seabrease, who is the wife of N. McLean Seabrease, and who was appointed executrix of the will.

In due course the Register of Wills appointed Harry A. Connor appraiser, who, on Aug. 5, 1921, filed his appraisement, assessing a tax of $475 upon the above legacy to N. McLean Seabrease, being at the rate of 10 per cent., less 5 per cent. discount.

This appeal was taken Sept. 1, 1921, from the above assessment.

On July 23, 1921, which was stated to be soon after the probate of the will, and was before the appraiser filed his appraisement of the tax, N. McLean Seabrease filed with the Register of Wills a renunciation of the legacy bequeathed to him, which renunciation was in the following form:

"Philadelphia, Pa., July 23, 1921.

"I, N. McLean Seabrease, hereby waive, relinquish and renounce the legacy of Five thousand dollars ($5000) bequeathed to me in the last Will and Testament of Rebecca Paul, deceased.

Witness:                          (Sgd.)    N. MCLEAN SEABREASE."
(Sgd.)    Will A. Clader.

The first question for determination is the *bona fides* of this renunciation, for it is evident that an improper motive might readily exist in a case of this kind. If the legatee had retained his legacy, it would be taxable at 10 per cent., as the testatrix died after the passage of the Act of May 4, 1921, P. L. 341; whereas, if he renounced it, the legacy of $5000 would, as might appear from a *dictum* in Wonsetler *v.* Wonsetler, 23 Pa. Superior Ct. 321, fall into the residue, which is bequeathed to his wife, Helen P. Seabrease, and be taxable at only 2 per cent.

Mr. Seabrease and his counsel, Boyd Lee Spahr, Esq., were examined, and the notes of their testimony are appended. I am clearly of opinion that in this case the renunciation was entirely *bona fide* and not caused by any desire or intention on the part of the legatee to evade the payment of tax. His motive was stated by himself to be that he did not consider himself entitled to any compensation for any services he had performed for his mother-in-law, the testatrix, and that, on the contrary, she did a great deal more for him during her life. The good faith and veracity of Mr. Seabrease are evidenced by the fact that he might have perhaps claimed the legacy free of tax, on the ground, as the will states, that it was given to him in compensation for services rendered by him to the testatrix in the handling of her property. This would have raised an entirely different question, which might have been decided in his favor, as is shown in Gibbons's Estate, 16 Phila. 218; Carst *v.* Hoover's Exec'rs, 32 Pa. C. C. Reps. 77, and other cases cited. At all events, I find as a fact in this case that the renunciation was *bona fide*.

The next question is whether the appraisement and assessment of the legacy at 10 per cent., instead of 2 per cent., is according to law, and in behalf of the appellant Mr. Ingersoll submitted a carefully prepared and able brief. His first point is that the Inheritance Tax Act of June 20, 1919, P. L. 521, imposes a tax on the succession or transfer of property, and in this case there has been no succession or transfer to Mr. Seabrease. But the Act of 1919 is entitled "An act providing for the imposition of taxes upon the transfer of property passing from a decedent," and its operative words in section 1, which are applicable to the present case, are that "a tax is imposed upon the transfer of any property, real or personal, to persons or corporations, . . . when the transfer is by will or by the intestate law from any person dying seized or possessed of the property." What is taxed, therefore, is a transfer by will or the intestate law; no distinction is made between the two cases, nor is there any distinction between real and personal property. So long as the owner lives, he retains the ownership of the property, but his ownership ceases at his death, and it is his death that effects the transfer to another. If he dies intestate, the ownership is transferred to his heirs or next of kin as designated by law, but if he leaves a will, the testator himself designates the persons who take. But in either case, and in every case, the transfer of the property is due to the death of the owner and occurs at that time. This is the essential thing. The property, either real or personal, may indeed be taken for debts or may be subject to marshaling, but these administrative details are, in the language of logic, accidents, and do not concern or affect the essence of the matter. When, therefore, Mrs. Paul died, *eo instanti*, the property that she had previously owned was transferred to the persons whom she designated in her will, and it is this transfer that is taxed by the act of assembly: Lines's Estate, 155 Pa. 378; Small's Estate, 11 Pa. C. C. Reps. 1. That the legacy vested in N. McLean Seabrease immediately on Mrs. Paul's death is, of course, obvious. Had he died during the next hour, his personal representative would have been entitled, and his creditors, at any time before he renounced it, could have attached his interest, even if he had been ignorant of the legacy: Tarr *v.* Robinson, 158 Pa. 60; Heilig *v.* Heilig, 28 Pa. Superior Ct. 396.

It was, indeed, argued that as section 21 of the Fiduciaries Act of June 7, 1917, P. L. 447, provides that a legacy shall be deemed to be due and payable at the expiration of six months from the death of the testator, it follows that the legacy does not vest in the legatee, except after an order of distribution; but this is certainly not so. The legacy vests at once, although it cannot be

1 D. & C.

demanded for six months, or, under the old law, for one year, but this is merely for the protection of creditors and the convenience of the executor in the settlement of the estate: Swinburne on Wills (7th ed.), Part IV, § IV, 20; Gill's Estate, 24 Dist. R. 1.

Of course, a legatee may renounce his legacy, but the very fact of renunciation implies that he has something to renounce. Had he assigned it, of course the assignee would take subject to the Commonwealth's right to the tax. By his voluntary act, Mr. Seabrease divested himself of his right to receive, but the question here is whether his act divested the Commonwealth of its right in the premises.

The decisions of our Supreme Court, cited by the learned counsel for the appellant, do not lead to any different conclusion. They were decided, it is true, under the prior Act of 1887, which in terms imposes the tax on the estate passing by will or intestate laws, but they seem to emphasize the principle that the tax is laid upon the right to take rather than the property taken. It is said, for example, in Orcutt's Appeal, 97 Pa. 179, that the tax is on the net succession to the beneficiaries, and in Finnen's Estate, 196 Pa. 72, stress is laid on the distinction "between the levying of a tax upon the specific property of a legatee after it has become vested in possession and imposing a charge or tax upon the right to have the property by way of succession to the estate of a decedent." And this very distinction is further emphasized by the language of the present Act of 1919, which, as I have shown above, imposes a tax upon the transfer of property by means of the death of the owner.

Pepper's Estate, 159 Pa. 508, and Kerr's Estate, 159 Pa. 512, were also cited, but these decisions are not in point. In these cases moneys paid by way of compromise to contestants, who were not legatees under the will, were held not subject to tax, the reason, as stated by Penrose, J., in the latter case, being: "The allowance or compromise of their claims simply reduces the estate afterwards passing to volunteers, with the same effect as if the reduction had been caused by the payment of debts, or as if the payment or surrender had been the result of a suit terminating in favor of the claimant."

I now pass to a consideration of Frank's Estate, 28 W. N. C. 323; 9 Pa. C. C. Reps. 662; 20 Phila. 139. There an intestate left a widow and a sister, so that his residence descended to the sister as his heir-at-law, subject to the widow's right as tenant for life in one-half. The widow continued to reside there, and the sister of the decedent, about sixteen months after decedent's death, conveyed the property to her, in order, as her deed recited, to carry out the intention of the decedent. It was held that the sister's interest was liable for collateral tax. Hanna, P. J., used the following significant language:

"The release or conveyance by a devisee, legatee or distributee, after the devise, legacy or distributive share has once vested, will not deprive the Commonwealth of the collateral inheritance tax. The tax accrues immediately upon the death of the testator or intestate. And payment cannot be evaded by a conveyance or assignment to one whose right of succession is not subject to the tax. A devisee or legatee may waive all claim and refuse the bounty of a testator, or to share as a distributee, but if he be a collateral heir or stranger to the blood of testator, the tax remains due and payable. . . .

"It is, therefore, contended because the sister waived and relinquished her interest in the real estate for a nominal consideration in favor of the widow, it is thereby relieved from payment of the collateral tax. But, as shown, this is a mistaken view of the law. The sister inherited the real estate of her

Paul's Estate.

brother immediately upon his death. It then passed to her, and by virtue of the Act of May 6, 1887, P. L. 79, at once became liable to the tax. The widow obtained title from her after she became the owner by operation of law, and when she so conveyed, it was subject to the lien of the tax which accrued at the death of the decedent."

The learned counsel for the appellant endeavored to distinguish Frank's Estate, on the ground that it concerned real estate which vested in the heir by operation of law, and that the heir must, in order to divest his title, make a retransfer; whereas, in the present case, the residuary legatee will receive the property under the will of the testator and not by any assignment by the collateral. I think the distinction is unsound. The act of assembly makes no distinction whatever between real and personal estate. Judge Hanna evidently thought so, for he says in the passage quoted: "The release or conveyance by a devisee, legatee or distributee after the devise, legacy or distributive share has once vested, will not deprive the Commonwealth of the collateral inheritance tax. The tax accrues immediately upon the death of the testator or intestate." I repeat, the tax is on the transfer caused by the death of the owner. Payment or assignment of the legacy by the executor to the legatee is merely part of the administrative machinery provided by law for the orderly settlement of the estate.

In distinguishing Frank's Estate, stress was laid by counsel on the fact that in that case the heir conveyed directly to the widow, while in the case at bar the legatee simply renounced. The opinion of Judge Hanna above quoted shows, however, that he decided Frank's Estate on a more general ground, and I fail to see any substantial distinction. To renounce means, as a term of law, to give up or to surrender a right. What difference does it make whether the right to receive a legacy is renounced for the benefit of the residuary legatee, or directly assigned to her? The effect would be the same; in either case the residuary legatee would receive the pecuniary legacy by the act of the legatee, and the form of the act seems immaterial, so far as the Commonwealth is concerned. I, therefore, consider the principle of Frank's Estate as ruling the present case.

Mr. Ingersoll also cited Wolfe's Estate, 89 App. Div. (N. Y.) 349; s. c., 179 N. Y. 599, and Cook's Estate, 187 N. Y. 253; also Stone's Estate, 132 Iowa, 136, as sustaining his contention. These cases are, of course, not authority here, and, in view of what has been already said, I do not think it is necessary to discuss them in detail, but it may be observed that the New York statute, as quoted in 89 App. Div. (N. Y.) 350, defines the transfer to include the "*passing* of property or any interest therein in *possession* or *enjoyment*," the important words being thus italicized in the report; while in Stone's Estate, 132 Iowa, 136, it appears that the probate of the will was set aside by judicial decree, so that strictly nothing passed under the will. It was a case of compromise, resembling Pepper's Estate and Kerr's Estate, above referred to. Gleason & Otis on Inheritance Taxation, 248, cited by Mr. Ingersoll, while citing Wolfe's Estate and Stone's Estate, adds that the Pennsylvania courts arrive at the contrary, and, perhaps, more logical conclusion, and refer, in addition to Frank's Estate, to the case of Small's Estate, 11 Pa. C. C. Reps. 1.

And now, Dec. 3, 1921, the above appeal of Helen P. Seabrease, executrix of Rebecca Paul, having come on for hearing, it is ordered and decreed that the appeal be dismissed and the assessment and appraisement of the legacy of $5000 bequeathed to N. McLean Seabrease by the will of said Rebecca Paul be confirmed.