## Orcutt's Appeal.

1. In order to render personal property of a decedent liable to collateral inheritance tax, under the laws of this state, it must have a *situs* within the Commonwealth.

2. The bonds of the United States, no matter where deposited, cannot be said to have a *situs* different from the domicile of their owner.

3. The collateral inheritance tax does not attach to the very articles of property of which the deceased dies possessed. It is imposed only on what remains for distribution after expenses of administration, debts, and rightful claims of third parties are paid or provided for. It is on the net succession to the beneficiaries, and not on the securities in which the estate of the deceased was invested.

4. Estates not passing by a will that is operative within this state, or under the intestate laws thereof, or by deed or grant intended to take effect after the death of the decedent, are not subject to collateral inheritance tax under the laws of this Commonwealth.

5. A., a citizen of New Jersey, died domiciled there, having at the time of his decease certain United States bonds deposited with B. in this Commonwealth, which bonds were overdue. A. by his will left all his estate to persons not citizens of this Commonwealth and not domiciled here, and nominated C. as his executrix. who was domiciled in New Jersey. The will was admitted to probate in New Jersey, and letters thereon granted there to C. C. demanded the bonds of B., who declined to deliver them. but at C.'s request took out ancillary letters of administration *c. t. a.* in Pennsylvania, collected the amount of the bonds and filed his account. A. had no creditors in Pennsylvania. *Held*, that the fund produced lacked some of the ingredients of liability above referred to, that neither the bonds themselves nor their proceeds ever had any *situs* other than that of the testator or his executrix, that it did not sufficiently appear that upon final distribution any portion of the fund would go to collateral legatees, and that therefore it was not liable for collateral inheritance tax under the laws of this Commonwealth.

6. The Act of April 10th 1849, sect. 13, Pamph. L. 572, providing in general terms that if any non-resident of the state should die leaving real or personal estate within this Commonwealth, the same should be subject to the payment of collateral inheritance tax, was intended to embrace only personal property of a tangible nature, actually situated or used for business purposes within the Commonwealth, and was never intended to apply to the kind of personal property from which the fund in this case was realized.

7. Whether said act was repealed by the Act of April 22d 1858, sect. 9, Pamph. L. 470, not decided.

[Orcutt's Appeal.]

February 8th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal from the Orphans' Court of *Philadelphia county:* Of July Term 1880, No. 97.

This was an appeal by Lydia Ann Orcutt, executrix of the estate of Wesley Grindle, deceased, under letters testamentary, granted in New Jersey, from the decree of the said Orphans' Court, dismissing her exceptions to the adjudication on the account of the Fidelity Insurance, Trust and Safe-Deposit Company, administrators *c. t. a.* of the said decedent in Pennsylvania, and confirming the said adjudication.

The facts, as stated in the adjudication of the auditing judge, HANNA, P. J., were as follows:

"Wesley Grindle was a citizen of and domiciled in the state of New Jersey, and died in that state on the 12th day of June 1879. His last will and testament, dated the 27th day of March 1879, was admitted to probate in the surrogate's office at Camden, New Jersey, on the 31st day of October 1879, and letters testamentary granted to Lydia Ann Orcutt, the executrix named therein, on the 6th day of December 1879. The decedent had on deposit with the Fidelity Insurance, Trust and Safe-Deposit Company of the city of Philadelphia $24,000 in bonds of the 10-40 loan of the United States, which had been called for redemption, and, being overdue, only awaited the intervention of decedent's legal representative to be converted into money.

"The Fidelity Insurance, Trust and Safe-Deposit Company declined to deliver the bonds to the executrix, being advised that it was needful for their protection to require ancillary letters to be granted in Pennsylvania. The executrix, being a resident of New Jersey, was incompetent to take letters testamentary in this state without entering security. In order to obtain possession of the bonds in question for the purposes of her administration, she therefore requested that ancillary letters of administration *cum testamento annexo* be granted by the register of wills of this county to the present accountants. Letters were accordingly granted to them on the 20th day of January 1880. The bonds were disposed of, and the proceeds constitute the subject of this account.

"This administration is purely ancillary to that of the executrix in New Jersey, and the fund remaining in the hands of the accountants, after deduction of all charges, is to be awarded to her for administration according to the terms of the will. By the will, with the exception of a legacy of $2000 to the testator's mother, the entire estate is bequeathed, in unequal proportions, to the testator's brothers and sisters. All the legatees reside in the states of New Jersey and New York, and none in this state.

"In view of these facts, it was claimed on behalf of the executrix and legatees that the fund was not liable to the tax on col-

lateral inheritances imposed by the laws of Pennsylvania, and should be awarded to the executrix of the domicile without charge therefor. The auditing judge is, however, of the opinion that the whole estate, excepting the legacy of $2000 to the decedent's mother, is subject to the tax in question, and accordingly awards the same to the register of wills of Philadelphia county."

To this adjudication Lydia Ann Orcutt filed the following exceptions:

1. Because the decedent being conceded to have been at his death domiciled in and a citizen of the state of New Jersey, where his will was admitted to probate, the learned judge erred in ruling that any collateral inheritance taxes accrued to the Commonwealth of Pennsylvania upon the funds for distribution in the hands of the present accountants, who were merely ancillary administrators with the will annexed of such decedent.

2. Because the learned judge erred in not reporting and awarding the whole balance in the hands of the accountants to this exceptant without any deduction therefrom as for collateral inheritance taxes alleged to be due to the Commonwealth of Pennsylvania.

The court, after argument, entered a decree dismissing the exceptions, and confirmed the adjudication.

Lydia Ann Orcutt took this appeal, assigning the decree for error.

*Joseph B. Townsend*, for the appellant.—The question whether the personal estate, and choses in action in this state, of a decedent, who was at his death domiciled and resident in another state are liable to the collateral inheritance tax imposed by the laws of Pennsylvania, has long been doubted by the bar. Under the Act of April 7th 1826, Purd. Dig. 214, which first imposed collateral inheritance tax (and its supplement of April 22d 1846, Purd. Dig. 215, which increased the rate from two and one-half to five per cent.) the property taxable "being within this Commonwealth" was only such as may be left for distribution among legatees or volunteers after payment of debts and expenses of administration: Commonwealth's Appeal, 10 Casey 204. How is it possible to ascertain, in this case, what will be left, until after the executrix in New Jersey shall administer this ancillary fund with the rest of the estate? The New Jersey court can alone ascertain the balance for distribution among legatees.

The Act of March 11th 1850, sect. 3, Purd. Dig. 216, declares that the words "being within this Commonwealth," in the Act of 1826, shall be so construed as to relate to all *persons* who have been at the time of their decease, or may now be domiciled within this Commonwealth, as well as to *estates*.

The Act of April 10th 1849, sect. 4, Purd. Dig. 215, does in terms provide for the imposition of the tax on real or personal

[Orcutt's Appeal.]

estate within this Commonwealth, belonging to non-residents at the time of their death. This act is entitled "An Act to create a sinking fund and to provide for the gradual and certain extinguishment of the debt of the Commonwealth," Pamph. L. 571.

This Act of 1849, was, I assert, absolutely repealed by the Act of April 22d 1858, Pamph. L. 470, entitled "An Act to establish a sinking fund for the payment of the public debt," the eighth section of which provides, "that the Sinking-Fund Act of 1849, and all laws inconsistent herewith, are hereby repealed." But sects. 11, 13 and 14 of the Act of April 10th 1849, have been reprinted in all the subsequent editions of Purdon's Digest with the following foot note by Mr. Brightly: "This is a portion of the Act of 1849, 'to create a sinking fund;' but the ninth section of the Act 22d April 1858, has expressly repealed 'the Sinking-Fund Act of 1849.' These sections, however, are retained in the digest, because it is impossible to suppose that the legislature intended, by this general repealing clause, to abrogate them; if the Act of 1858 has that effect, it was unadvisedly passed, and will, no doubt, be corrected. It is an instance of careless legislation which cannot be too severely reprobated."

If there is any force in legislative language, the repeal of the 11th, 13th and 14th sections of the Sinking Fund Act of 1849 was just as surely effected as the repeal of its other sections. Unless Mr. Brightly's notion, that the legislature did not comprehend what they were doing, is to have the force of a re-enactment of these sections, they do stand absolutely repealed.

It was settled in Short's Estate, 4 Harris 63, decided in 1851, after the Act of 1849 was passed, and before it was repealed, that the personalty of a citizen of Pennsylvania, whether derived from within the state or from any other state or county, was liable to the tax. This position has never been questioned. The legacy duty under the English statutes is applied in exactly the same way: In re Ewin, 1 C. & J. 157; Att'y-Gen. v. Napier, 6 Exch. 217, 220.

If the rule thus settled, both here and in England, be unquestioned, on what principle of justice or right ought the personalty of citizens of other states found here to be taxed? The only two cases which give any color of judicial authority for the imposition of the tax in a case like the present are Alexander's Estate, 4 Penna. Law Jour. 448, decided by Judge KING in 1845, and Commonwealth v. Smith, 5 Barr 142. In the former Judge KING held, in analogy to what were then the decisions of the English courts under their legacy-duty acts, that the personalty of a non-resident decedent was liable to this tax. But the English cases which he relied on have been overruled in England, and the contrary rule established there: Thomson v Advocate-General, 13

[Orcutt's Appeal.]

Simons 153; Att'y-Gen. *v.* Napier, *supra;* 3 Williams on Executors (6th Am. ed.) 1745.

In Commonwealth *v.* Smith, 5 Barr 142, decided in 1847, the decedent, though he died in France, where he had resided some years prior to his death, called himself in his will " of the city of Philadelphia." The case, though mainly argued on the other ground, might well have been decided on the ground that the decedent was still a citizen of Pennsylvania. The dictum in the opinion of BURNSIDE, J., that domicile had nothing to do with the question, does not touch the reason of the decision.

Analogous decisions in the United States Courts are in our favor: Railroad Co. *v.* State of Pennsylvania, 15 Wall. 300; Murray *v.* City of Charleston, 6 Otto 433; Kintzing *v.* Hutchinson, 7 W. N. C. 226; Allen *v.* Philadelphia Sav. Fund, Id. 231. See also McKeen *v.* Northampton County, 13 Wright 519; Hilliard on Taxation 132.

There being no creditors or claimants in Pennsylvania, the case is not within the ruling of Dent's Appeal, 10 Harris 515, and kindred cases. If the rule adopted by the court below shall prevail, there will be double taxation in all cases where the state of which the decedent was a resident has a law imposing a collateral inheritance tax.

The Commonwealth was not represented by counsel.

Mr. Justice STERRETT delivered the opinion of the court, May 2d 1881.

The fund for distribution, $22,029.02, as shown by the account of the ancillary administrator, is the net proceeds of United States ten-forty bonds, which belonged to Wesley Grindle, a citizen of the state of New Jersey, and domiciled therein at the time of his decease in June 1879. The bonds deposited by the decedent with the Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia for safe keeping, had been called for redemption, and being over due, were payable on presentation at the United States Treasury. By his last will and testament the decedent gave a legacy of $2000 to his mother, and bequeathed the entire residue of his estate, in equal proportions, to his brothers and sisters, all of whom reside in the states of New Jersey and New York. The will was probated in New Jersey, and in December 1879 letters testamentary were duly granted by the surrogate to appellant, the executrix therein named. The Fidelity Company, claiming that for its protection ancillary letters should be taken out in this state, declined to deliver the bond to the executrix. Letters of administration were accordingly granted by the register of wills in Philadelphia to the accountant, who collected the bonds and filed an account showing the above balance of cash on hand. The administration under

these letters was purely ancillary to that of the executrix in New Jersey, and inasmuch as there appear to be no creditors, legatees or distributees in this state, the fund, after deducting all proper charges, must be awarded to her for administration according to the laws of New Jersey and the provisions of testator's will.

We are not called upon to express any opinion as to whether under the circumstances the demand of the Fidelity Company was reasonable or not.  It was acquiesced in, and the single question presented by the assignments of error is, whether the residue of the fund, after deducting court costs and the legacy of $2000 to testator's mother, is subject to collateral inheritance tax under the laws of this state.  The learned president of the Orphans' Court held that it was, and he accordingly decreed the payment of $1100.28 to the register of wills for collateral inheritance tax, and the residue to the executrix in New Jersey for administration and distribution there.

The first act on the subject of collateral inheritance taxes, passed in 1826, provides that all estates, real, personal or mixed, passing from any person who may die seised or possessed of such estate, being within this Commonwealth, either by will or under the intestate laws thereof, to any person other than to father, mother, husband, wife, children or lineal descendants, shall be liable to a tax; and makes it the duty of all executors, administrators and their sureties to pay the same : Pamph. L. 227.  By the Act of 1850, the words " being within this Commonwealth," in the Act of 1826, were construed " to relate to all persons, who have been at the time of their decease, or may now be domiciled within this Commonwealth, as well as to estates ; and this is declared to be the true intent and meaning of said act:" Pamph. L. 170.

Shortly after the passage of the latter act, it was decided in Short's Estate, 4 Harris 63, that personalty of a citizen of Pennsylvania, derived either from within or without the state and passing to others than those named in and excepted by the terms of the original act, was liable to the tax.  This position has never been questioned.  Nor can there be any doubt as to real estate situated within the Commonwealth.  Whether the person dying seised or possessed thereof be a citizen of the state or not, so much thereof as passes to collaterals is subject to the tax, because it has a *situs* within the state, and the title must be transmitted according to our laws governing the conveyance or descent of real estate.  It is only in regard to personal property of non-residents that any question can arise.  The general rule undoubtedly is, that the *situs* of personal property follows the domicile of the owner ; but for particular purposes some species of personal property may have an actual *situs* distinct from the legal one.

This qualification of the rule, however, cannot apply to the kind

of property from which the fund in this case was realized. The bonds were simply evidences of indebtedness, not by any person or corporation within the Commonwealth, but by the general government. There is no reason why such property should, for any purpose, have a *situs* different from the domicile of its owner. The testator intrusted the bonds temporarily, for safe-keeping, to the Fidelity Company, but they were, constructively at least, in his possession at the time of his decease. There were no creditors, legatees, or distributees in this state claiming them or any portion of the proceeds thereof; and in the absence of creditors or other interested parties in this state claiming administration here, I can see no good reason for refusing to deliver the bonds to the executrix. As it is, however, the fund here is in the hands of a purely ancillary administrator, whose sole function was to receive from the United States treasury the amount called for by the bonds and transmit the same, less costs and charges, to the executrix in New Jersey for administration according to the laws of that state, and the directions of the testator. It is true that if creditors or distributees residing here had intervened and demanded distribution or payment directly from the accountant, the Orphans' Court in its discretion might have heard them, and might also have permitted foreign creditors to present their claims; but that is a matter of judicial discretion, not of right: Dent's Appeal, 10 Harris 514.

It is also clear from the act itself, as well as from the construction it has heretofore received, that the property taxable is such only as passes to *volunteers*, persons not excepted by the terms of the act. The tax does not attach to the very articles of property of which the deceased died possessed. It is imposed only on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on the net succession to the beneficiaries and not on the securities in which the estate of the decedent was invested : Commonwealth's Appeal, 10 Casey 204 ; Strode *v.* Commonwealth, 2 P. F. Smith, 181. How then is it possible to impose a tax on this fund when it has never been ascertained judicially how much, or whether any of it will go to the collateral legatees ? When the executrix charges herself with the fund received from the ancillary administrator and settles her account in New Jersey, who can tell how much of it may be successfully claimed by creditors and others as against the legatees ? The court of the testator's domicile is the only one that can properly determine how much of it will ultimately go to the collateral legatees.

Again, by the very words of the act, the tax is not only limited to such estates as have a *situs* within the Commonwealth, and also pass to collateral heirs or legatees, but it is further restricted by defining the mode in which they shall pass, viz., estates "being within this Commonwealth," and "passing from any person," &c.,

[Orcutt's Appeal.]

" either by will or under the intestate laws thereof," &c.   It is clear, therefore, that estates not passing by a will that is operative within the state, or under the intestate laws thereof, or by deed or grant intended to take effect after the death of the decedent, are not within the purview of the act.   Devolution, either under the intestate laws of the Commonwealth, or under a properly executed will, is clearly made a condition of liability to the tax.   To render estates liable to the tax therefore, they must in the first place have a *situs* within the Commonwealth, and in the second place, they must pass, in one or other of the modes prescribed, to the collateral heirs or distributees intended by the act.   We are of opinion that the fund in question lacks at least some of the ingredients of liability above referred to.   Neither the bonds themselves, nor their proceeds ever had any *situs* other than the domicile of the testator or his executrix ; and while the will is sufficient to pass personal property in this state, it does not yet appear that upon final administration and distribution any part of the fund will go to the collateral legatees.

The Act of April 10th 1849, provides in general terms that if any non-resident of the state shall die leaving real or personal estate within this Commonwealth the same shall be subject to the payment of collateral inheritance tax.   It is contended that this act was repealed by the Act of April 22d 1858.   Without passing on that question, we are of opinion that the act was never intended to apply to the kind of personal property from which the fund in this case was realized.   It was doubtless intended to embrace only personal property of a tangible nature, actually situated or used for business purposes within the Commonwealth, and not to mere certificates of indebtedness, such as government bonds, whose *situs* necessarily follows the owner's domicile.

Decree reversed and it is now adjudged and decreed that the residue of the fund, viz., twenty thousand and five dollars and fifty-two cents, less the costs of this appeal, be paid to the appellant, Lydia Ann Orcutt, executrix of the last will of Wesley Grindle, deceased, for administration and distribution according to the laws of the state of New Jersey and the provisions of said testator's will ; and it is further ordered that the costs of this appeal be paid by the appellee out of the fund in hand.