## Camp's Estate.

Argued November 26, 1929. Before FRAZER, WALL-
ING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*H. Stanley Douglass,* with him *Philip H. Moyer,*
Deputy Attorney General, and *Cyrus E. Woods,* Attor-
ney General, for Commonwealth, appellant.—A review
of the various statutes, since 1826, with relation to in-
heritance tax legislation, shows conclusively that the in-
tention of the legislature in enacting the various
statutes, was to have the debts and expenses of an estate
deducted from the estate in its entirety, including both
realty and personalty, in arriving at the clear value of
the estate for taxation: Cooper's Est., 127 Pa. 435;
Jewell's Est., 235 Pa. 119; Finnen's Est., 196 Pa. 72;

Jackson v. Myers, 257 Pa. 104; Kirkpatrick's Est., 275 Pa. 271.

In determining the clear value of a decedent's estate for transfer inheritance tax where there are life estates and remainders in both realty and personalty the debts of the decedent and expenses of administration should be deducted from the entire estate before arriving at the value of the life estates and remainders: Cooper's Est., 127 Pa. 435; Jewell's Est., 235 Pa. 119; Davis's Est., 72 Pa. Superior Ct. 332.

*J. Garfield Houston,* for appellant Bank of Pittsburgh. —The Pennsylvania tax is to be levied against the respective shares of a decedent's estate, not against the estate as a whole: Oliver's Est., 273 Pa. 400; Knowlton v. Moore, 178 U. S. 41; Finnen's Est., 196 Pa. 72; Brown's Est., 208 Pa. 161; Kirkpatrick's Est., 275 Pa. 271, 274; Dolan's Est., 279 Pa. 582.

OPINION BY MR. JUSTICE SCHAFFER, January 6, 1930:

The Orphans' Court of Allegheny County in this proceeding evolved a new method of levying inheritance taxes. Apparently it thought the accumulated experiences on the subject since the passage of the first act levying them in 1826 (Act April 7, 1826, P. L. 227), and the customs and practices which have grown up in connection with their imposition and are time honored, had served their day and should be disregarded. And so, instead of levying them in the ancient way, in the adjudication of the estate now before us, that tribunal has brought forth the idea of prorating debts and expenses among all the legacies and devises instead of deducting them from the gross estate. It would seem that Mr. Justice HOLMES's aphorism in New York Trust Co. 'v. Eisner, 256 U. S. 345, "Upon this point a page of history is worth a volume of logic," has some application to the matter in hand, because, after all, taxation (Federal income exactions to the contrary notwithstanding) should

be a simple and not a confusing subject, to the end that the citizen who is called upon to pay may at least hope to understand the rules which lead to the extraction of the levy from his pocket. It could not be argued that the new departure announced by the court below makes for simplicity in fixing the tax or validly be pretended that it does not greatly complicate the problems connected with the settlement of estates.

As applied in this estate the new method results in a loss of revenue to the Commonwealth of more than two hundred dollars, which is the reason why it appeals. The Bank of Pittsburgh, trustee of the estate, while agreeing with the Commonwealth on the main question, also appeals from the decree of distribution, but on other grounds, which will be hereafter dealt with.

The recognized method of ascertaining the amount of inheritance taxes to be paid out of a decedent's estate was for the debts and administration expenses to be deducted from the gross estate, thus arriving at "the clear value of the property subject to such tax": Act June 20, 1919, P. L. 521, as amended by the Act of May 15, 1925, P. L. 806. "In ascertaining the clear value......the only deductions to be allowed from the gross values ......shall be the debts of the decedent and the expenses of the administration": Ibid. After this is done, the act provides (as amended by the Act of July 12, 1923, P. L. 1078) that the executor, administrator or trustee, "paying any legacy or share,......shall deduct therefrom at the rate of two per centum upon the whole legacy or sum paid," in certain instances, and ten per centum in others. Debts and administration expenses are first payable from the personalty of the estate: Jewell's Est., 235 Pa. 119; Cooper's Est., 127 Pa. 435. Attendant upon this last stated rule are many most important results which are firmly knit into that part of our jurisprudence having to do with the handling and settlement of decedent's estates: Sales of real estate for the payment of

debts, conversion, abatement of legacies, widow's exemptions, etc.

What did the court below do which changed the long-established practice? It calculated the ratio of debts and expenses to the gross estate and then apportioned that amongst the legacies and directed that the tax should be calculated upon the result thus ascertained. A single instance will show how this method works out. An automobile appraised at $500 was given to a brother. The tax upon it was 10%. Under the method heretofore pursued, this would yield the Commonwealth a tax of $50. On the plan devised by the court below of apportioning the debts and expenses to the particular legacies, the ratio of debts deductible from the value of the automobile was $55.95, leaving its taxable value $444.05, upon which the tax to be paid amounts to $44.40, not 10%, as the statute provides, but 8.88%.

The tax on the entire estate as calculated by the Commonwealth under the method heretofore pursued amounted to $4,245.25, whereas that pursued by the court below, prorating the debts and expenses among the legacies, makes the tax $4,042.98. The court based its ruling on Frick's Est., 277 Pa. 242, 250. There is nothing said in that opinion about prorating debts and expenses and in it Mr. Justice SIMPSON expressly says, "The appraisement to be made is not of the legacies or devises but the whole estate of a decedent; the debts and expenses of administration are not to be deducted from any particular gift or gifts but from the whole estate." No mention is made in the various acts of making deductions from legacies or devises, but from the gross value of the estate. There is no warrant in the law for imposing the tax in the way the court below did. If such a plan could be adopted, it would greatly complicate the fixing of the amounts of taxes and the settlement of estates and in many instances give to the Commonwealth less than the percentage fixed by the acts.

As to the question raised by the appeal of the Bank of Pittsburgh, trustee, whether it is entitled to have what it alleges to be the unapplied balance of debts and expenses credited against the value of remainders in realty on which the tax is being paid presently, rather than have the credit given in the future when the tax on the remainders in personalty will be paid by the trustee, although appellant states that this question "presents itself for decision whether or not the court adopts the plan of prorating the debts and expenses among all the legacies and devises," we think there is no such question left in the case when the proper method of determining the tax is pursued, as stated by us in dealing with the Commonwealth's Appeal. The trustee argues that "since the residuary estate is entitled to the credit for debts and expenses rather than the specific legacies and since [in this particular case] the residuary estate is divided into life estates and remainders and the life estates in personalty are obviously not entitled to all of the credits for debts and expenses, they [the debts and expenses] must be allocated." Confusion arises out of speaking in any such terms as "credits for debts and expenses." As pointed out before, these are simply to be deducted from the gross estate and the value of any life estate or remainder is to be determined after that has been done. There is no prorating to be done in fixing the tax nor is there any allocating of crediting. The statement presented by the Commonwealth to the court below at the argument showed that the proper method had been adopted by it.

In No. 154, the assignments of error are sustained and the record remitted to the court below to fix the tax in accordance with this opinion.

In No. 177, the assignments of error are sustained in part as set forth in this opinion.