## Bourne Estate

*Smith, Cahill & Aker,* for appellant.

*Daniel L. Quinlan, Jr.,* Deputy Attorney General, for Commonwealth.

TAXIS, P. J., March 6, 1959.—This matter comes before the court on appeal from inheritance tax appraisement. There is no dispute of fact; the parties have stipulated the facts. The sole issue involved relates to the value of certain shares of closely held stock of C. Dreisbach's Sons, Inc.

Decedent, Harry S. Bourne, died on March 20, 1958, and letters testamentary were granted to William M. Bourne on April 12, 1958.

Under the terms of decedent's will, William M. Bourne is executor and sole legatee and devisee and is therefore the only party in interest in this appeal.

On April 25, 1958, the executor filed an inheritance tax return stating a value of $105 per share for 17

shares of capital stock of C. Dreisbach's Sons, Inc., for a total value of $1,785.

The appraisement and assessment filed by the transfer inheritance tax appraiser dated July 29, 1958, however, valued the 17 shares of capital stock of C. Dreisbach's Sons, Inc., at $300 per share for a total value of $5,100.

Appellant submitted the following documents in support of his position that the stock in question is not worth more than $105 per share.

(1) Letter of May 29, 1958, from counsel for the executor requesting C. Dreisbach's Sons, Inc., to submit proof of their calculation that the stock was worth $105 per share, in which letter there was a specific request for copies of financial statements and records of sales;

(2) Copy of C. Dreisbach's Sons, Inc., financial statement for three months ending March 31, 1958, which shows a book value in excess of $300 per share;

(3) C. Dreisbach's Sons, Inc., at the time that they forwarded the financial statements above, also sent a list of stock transactions over the last 10 years showing a variance in sale prices between $100 and $105 per share. That list shows 10 sales over the last 10 years. Seven sales were at $100 per share, the other three sales at $105 per share.

In order to raise funds with which to pay administration expenses the executor instructed counsel to sell at the best possible figure these 17 shares of C. Dreisbach's Sons, Inc., capital stock and pursuant to that instruction letters were sent to C. Dreisbach's Sons, Inc., to the trust officer of the Union National Bank of Lewisburg, and to Merrill W. Linn, Esq., an attorney in Lewisburg, asking each for their assistance in the sale of such stock and requesting offers from or addresses of persons who might be interested in purchasing the stock.

(4) Because no offer or information was received which would indicate a better price than $105 per share, counsel for appellant secured from C. Dreisbach's Sons, Inc., the names and addresses of all existing stockholders of C. Dreisbach's Sons, Inc., stock. Letters were written to each of these stockholders, and of the 12 stockholders to whom letters were sent replies were received from six, and the offers ranged from $6.50 per share to $105 per share of those who were interested in purchasing this stock.

The final step in connection with the sale of this stock was to place an advertisement in the Union County Standard Journal, a newspaper of general circulation published in Lewisburg, once a week for three weeks, offering said stock for sale in the hope that an offer in excess of $105 per share might be obtained. No replies whatsoever were received as a result of this advertisement.

Because no better offer was obtained, the 17 shares were sold to C. Dreisbach's Sons, Inc., on October 16, 1958, at a price of $105 per share for a total sale price of $1,785.

In appraising assets for the purposes of assessing inheritance tax the test is the "value" of the assets and "value" means "market value" when market value is ascertainable. See 1 Hunter, Pa. Orphans' Court Commonplace Book 682, Inheritance Tax, §14(a); Camp's Estate, 298 Pa. 405.

The strongest possible evidence of market value is the sale price received for the stock in question by a willing seller from a willing buyer, and that is exactly what is present in the instant case. In order to raise funds to pay administration expenses it was deemed advisable to sell the stock in question and to do this the steps, as outlined above, were taken, the end result being that the best price obtainable was $105 per share. See Wood Estate, 36 Montg. 69; McCarter's

Estate, 62 Montg. 280; Jackson Estate, 4 D. & C. 2d, 550; Schwab Estate, 56 Dauph. 57.

There was no collusion involved in the sale or "rigging" of the market as the Commonwealth contends, and I find as a fact, therefore, after consideration of all the evidence, that the clear value of these shares of stock is, as declared in the return, $105 per share. The Commonwealth's appraisement of $300 per share is set aside, the appeal sustained and the assessment of $105 per share herewith entered.

And now, March 6, 1959, the appeal is sustained.