## Remmel Estate.

Argued September 30, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William McC. Houston,* with him *Houston, Houston & Donnelly,* for appellant.

*Francis J. Gafford,* Deputy Attorney General, with him *A. Ralph Ellis* and *William Howard Colbert,* Special Assistant Attorneys General, and *Edward Friedman,* Attorney General, for Commonwealth, appellee.

*Joseph N. Corcoran,* filed a brief for amicus curiae.

*Morris R. Brooke* and *Cuthbert H. Latta,* filed a brief for amicus curiae.

OPINION BY MR. JUSTICE ROBERTS, April 24, 1967:

Althea F. Remmel, a resident of Pittsburgh, died on March 20, 1963, leaving an estate, which consisted entirely of personalty valued at $1,684,122.35. Deductible debts and expenses amounted to $102,573.45. By her will and the codicils thereto, decedent gave specific and pecuniary legacies to certain named persons totalling $48,945 and created a trust of the residue. This trust was divided into seventeen equal parts, the income from each of which was given to an individual life beneficiary and, in certain instances, to a

successive life beneficiary. Upon the death of the beneficiary or beneficiaries entitled to receive the income from any 1/17 share of the principal of the residue that 1/17 share of principal was to be distributed to the W. H. Remmel and Althea F. Remmel Foundation, to be devoted exclusively to charitable purposes. (One of the life beneficiaries had predeceased the settlor which thereby accelerated the charitable remainder as to that 1/17 of the residue.) Mrs. Remmel expressly provided in her will that all inheritance taxes on property passing under her will be paid out of the residuary estate "or the principal of any trust succeeding thereto" and that all other legacies were given free of such taxes.

The Commonwealth assessed the combined value of the various remaining life estates to be $881,770.07 out of a total residuary estate of $1,532,603.90 or 54.34053% of that residue. Thus the combined present value of the charitable share was the reciprocal thereof, or 45.65947% of the residue. The present appeal is by the Pittsburgh National Bank, Executor under the Will of Althea F. Remmel, deceased, from the decree of the court en banc of the Orphans' Court of Allegheny County sustaining the Commonwealth's appraisement of the inheritance tax in the decedent's estate.

The dispute between the Commonwealth and the appellant concerns the method of computation utilized in arriving at the amount of tax due the Commonwealth. In particular, appellant's position is that the court below erred in permitting the Commonwealth to subtract deductions for allowable expenses and debts from a total estate valuation which included the value of charitable gifts bequeathed by the residuary clause of the decedent's will. Appellant insists that §601 of the Inheritance and Estate Tax Act of 1961,[1] requires these

---

[1] Act of June 15, 1961, P. L. 373, §601, 72 P.S. §2485-601.

deductions to be made from an estate valuation from which the amount of the charitable gifts has first been excluded. The tax consequences of the respective computations are reflected in the following comparison:[2]

| | Commonwealth's Computation | Appellant's Computation | Difference |
|---|---|---|---|
| Total Assets | $1,684,122.35 | $1,684,122.35 | |
| Taxable specific bequests ... | | 48,945.00 | |
| Taxable life estates in $1,635,177.35 balance (54.34053%) | | 888,564.04 | |
| Appraisement—Gross Estate . | 1,684,122.35 | 937,509.04 | |
| Less: allowable debts & expenses | 102,573.45 | 102,573.45 | |
| Clear value ................. | 1,581,548.90 | 834,935.59 | |
| Taxable specific bequests ... | 48,945.00 | | |
| Taxable life estates in $1,532,603.90 balance (54.34053%) | 832,825.08 | | |
| Taxable .................. | 881,770.08 | 834,935.59 | $46,834.49* |
| Tax at 15% .............. | $ 132,265.51 | $ 125,240.34 | $ 7,025.17 |

* Being the same as the residuary charitable factor of 45.65947% multiplied by the debts and expenses of $102,573.45.

An inheritance tax is neither a tax on the property of the decedent or on the transfer of such property but rather a tax on the right of succession in the estate of the decedent. *Belefski Estate,* 413 Pa. 365, 369-70, 196 A. 2d 850, 852 (1964) ; *Tack's Estate,* 325 Pa. 545, 549, 191 Atl. 155, 157 (1937) ; *Orcutt's Appeal,* 97 Pa. 179, 185 (1881). The tax which is imposed "upon every transfer subject to tax under this act"[3] is "computed upon the value of the property, in excess of the deductions hereinafter specified."[4] In determining the gross value of the estate from which the deductions are taken "the appraisement to be made is not of the legacies

2 Taken from appellant's brief, p. 21.

3 Act of June 15, 1961, P. L. 373, §201, 72 P.S. §2485-201.

4 Act of June 15, 1961, P. L. 373, §401, 72 P.S. §2485-401.

or devises but of the whole estate of a decedent; the debts and expenses of administration are not to be deducted from any particular gift or gifts, but from the whole estate." *Frick's Estate,* 277 Pa. 242, 250, 121 Atl. 35, 38 (1923), rev'd on other grounds,[5] 268 U.S. 473, 45 S. Ct. 603 (1925); accord, *Tack's Estate,* supra at 551, 191 Atl. at 157-58; *Camp's Estate,* 298 Pa. 405, 148 Atl. 496 (1930).

We cannot agree with appellant that the Commonwealth's computation denies the estate the full use of its legitimate deduction under §601 of the 1961 Act, which provides: "The only deductions from the value of the property transferred shall be those set forth in this Article. Except as otherwise expressly provided in this Act, they shall be deductible regardless of whether or not assets comprising the decedent's taxable estate are employed in the payment or discharge of the deductible items: Provided, That when a tax is imposed upon a transfer described in sections 221-241, such deductions shall be allowed to the transferee only to the extent that the transferee has actually paid the deductible items and either (1) the transferee was legally obligated to pay the deductible items, or (2) the estate subject to administration by a personal representative is insufficient to pay the deductible items." Appellant relies principally on the clause that deductions "shall be deductible regardless of whether or not assets comprising the decedent's taxable estate are employed in the payment or discharge of the deductible items." Thus the executor insists that the debts and expenses borne by exempt assets are expressly made deductible against taxable transfers. However, in our view the crucial factor is not the exempt nature of the

---

[5] The issue before the United States Supreme Court was the extent to which a decedent's estate could be subjected to taxation by both the state of domicile and other states in which the decedent had personal property at the time of his death.

charitable gifts but rather their derivation from the residuary estate.

A residuary legatee is one who receives the remaining assets of an estate after the satisfaction of all other legacies and the payment of all debts of the estate and costs of administration, *Thaw Estate,* 414 Pa. 347, 352, 200 A. 2d 290, 293 (1964); *Bricker's Estate,* 335 Pa. 300, 303, 6 A. 2d 905, 906-7 (1939). While the Remmel Foundation is entitled to receive, upon the termination of the life interests, the residue of Mrs. Remmel's estate, the size of this residue is itself dependent upon the extent of these other obligations, including the amount of the inheritance tax.

The Commonwealth's computation, whereby the allowable deductions are subtracted from the decedent's total assets, admittedly results in fewer dollars ultimately being received by the foundation. But this does not constitute a tax on charities, for decedent herself made the decision that any tax due be paid out of the residuary estate[6] and thereby reduced the residue by the amount of tax before her gift to charity. It is only the balance remaining in the residuary estate that decedent gave to the foundation and there is no tax upon that gift. See *Foster Estate,* 24 Pa. D. & C. 2d 182, 186 (O.C. Erie, 1960).[7] Accordingly, the charitable gift must be viewed as a nontaxable transfer made from the net distributive estate, not property which is excluded from the estate itself.

---

[6] Mrs. Remmel's will specifically provided for the payment of inheritance tax from the residuary estate. Under the Act of June 15, 1961, P. L. 373, §718, 72 P.S. §2485-718, taxes are paid out of the residuary estate unless there is a contrary intention appearing in the will. This section reverses the practice under prior law.

[7] It is strenuously argued that *Foster Estate,* which was decided under the Act of June 20, 1919, P. L. 521, §2, has no precedential value for a case arising under §601 of the 1961 Act. We do not agree. See Grossman & Smith, Pennsylvania Inheritance and Estate Tax §601-2 at 301 (1961); see generally id. at §302-2.4.

Appellant argues that the inclusion of the value of the estate passing to the foundation results in approximately 45% of the allowable deductions being wasted on exempt assets. The executor relies heavily upon *Kritz Estate*, 387 Pa. 223, 127 A. 2d 720 (1956) and *Kershaw Estate*, 352 Pa. 205, 42 A. 2d 538 (1945) in support of its conclusion that the noncharitable beneficiaries should be entitled to the full benefit of allowable deductions. Both cases, however, are inapposite. *Kritz* and *Kershaw* held that a mortgage debt of the decedent was deductible even though the property subject to the mortgage was owned as a tenancy by the entireties and thus not includible in the estate's appraisement value. Unlike the instant case, they did not involve a determination of what portion of the estate is to be included in the appraisement of the estate's gross value from which the deductions are taken.[8]

Decree affirmed. Each party to pay own costs.

CONCURRING OPINION BY MR. JUSTICE COHEN:

Our problem here is to determine the impact of Article III "Transfers Not Subject to Tax" and decide

[8] The dissenting opinion's reliance upon §706 of the Act of 1961 is likewise misplaced. Before the Secretary of Revenue can determine the value of the decedent's estate he must first determine which assets are includible therein. Thus the threshold question posed by this appeal is whether the inclusion of the residuary estate in the appraisement value of the decedent's estate amounts to a tax on charities and for the purpose of determining this threshold question, the amount of the tax is insignificant. The majority opinion answers this question in the negative whereas the dissent assumes an affirmative answer and then seeks to demonstrate, on the strength of that assumption, that the imposition of a tax on charities runs counter to the Act. Under the terms of the will the inheritance tax, which is imposed only upon the specific gifts to individuals, is to be paid out of the residuary estate, with the remainder, if any, going to the charitable foundation. Indeed, conceptually the Commonwealth's computation no more amounts to a tax on charities than does the appellant's, for under either ap-

whether that article gives us any clue or guide as to whether there shall be included in the "whole estate," "gross estate," "taxable estate," "gross probate estate," or whatever it might be called, the value of the property transferred to a charity. A superficial reading of Article III indicates that with the exception of governmental and charitable transfers, none of the "transfers not subject to tax" is includible in the gross estate.

Better draftsmanship would have eliminated the confusion that results in not emphasizing the distinction between transfers not subject to tax which are not includible in the gross estate and transfers not subject to the tax which are includible in the gross estate.

There is no doubt that the history of §302 (the charities exemption) has contributed to the confusion. Historically, transfers to charities in Pennsylvania were not exempt from the payment of transfer inheritance tax, and assets transferred to charities were included in the gross estate. The exemption to charities from payment of transfer inheritance taxes was extended to the charities by the Act of May 28, 1956, P. L. (1955) 1757, which amended the Act of 1919.

The practice under the Act of 1919, the Act of 1956 and the Act of 1961, has been uniform. After the allowable debts and expenses and other deductions have been deducted from all of decedent's assets in the gross estate, both the noncharitable and the charitable transfers are made from the resulting net distributive estate. Prior to the Act of 1957, the inheritance tax was

proach the ultimate gift to charity is reduced by the amount of the inheritance tax which the estate must pay. Appellant's calculation, moreover, would result in a specific gift to an individual followed by a charitable remainder being subject to less tax than the same gift not followed by a charitable remainder. The Act of 1961 did not intend to have the effect of reducing the specific legatee's liability (whether this liability is to be satisfied out of his gift or the residuary estate) but simply to exempt charities from paying a tax on their inheritance.

collected from both the charitable and noncharitable transfers. After the Act of 1957, no tax was collected on the charitable transfer but only on the noncharitable transfers. The Act of 1961 effected no change in this procedure, and the practice continued of including in the gross estate property of the decedent which was to be distributed to charitable transferees and to noncharitable transferees.

A close reading of the Act of 1961 causes the instant confusion, since the Act makes no clear distinction between exemptions afforded to gross estate assets and to assets that are not included in the gross estate. Hence, appellants contend with some force that the value of the property to be transferred to a charity should not be included in the gross estate. However, I see no clear legislative intent that a change of this nature was contemplated when the legislature enacted the Act of 1961. I do see in the legislative history of this section a clear expression of intent by the legislature, evidenced by its almost verbatim adoption of the Act of 1957, to continue the inclusion of charitable as well as noncharitable transfers in the value of the gross estate, from which value the deductions provided for in Article VI would be taken.

An appraisement for inheritance tax serves two purposes: (a) it is a list of all items of realty and personalty of which the decedent died seized; (b) it fixes the cash value of each of said items.

Appraisements were originally provided for by §10 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 P.S. §2321. That section required the appointment of appraisers by the register of wills. However, it was superseded by the Act of May 4, 1927, P. L. 727, as last amended by the Act of May 21, 1943, P. L. 370, 72 P.S. §2324, so that the Auditor General and, since 1943, the Secretary of Revenue now appoint the inheritance tax appraisers. To the same effect see

§407 of The Fiscal Code, Act of April 9, 1929, P. L. 343, as amended by §1 of the Act of May 21, 1943, P. L. 380, 72 P.S. §407.

After the appraisement has been filed it then becomes the duty of the register of wills as agent for the Commonwealth in the collection of inheritance tax to determine the clear value of the estate passing from the decedent in accordance with the provisions of the Transfer Inheritance Tax Statutes. This procedure has been followed throughout the Commonwealth, particularly since the enactment of the Act of May 27, 1943, P. L. 757, 72 P.S. §2302. The allowance of debts and deductions by the register of wills is a function separate and apart from the appraisement by the inheritance tax appraisers: *Weir Estate,* 399 Pa. 612, 161 A. 2d 388 (1960). The state-wide practice since 1957 has been to deduct from the clear value of the estate passing from the decedent, the charitable bequests in order to determine the clear value of the estate passing from the decedent and subject to the transfer inheritance tax. Since there have been no deviations from this long-accepted practice, I see no reason to change it. In fact, I regard this constant practice as added reason for affirming the lower court.

Were it not for my desire to determine this issue on its merits, I would vote to quash this appeal. Appellant maintains that the assets applicable to the charitable gifts should not have been appraised and they now object to such appraisement. But §1001 of the 1961 Act provides that one not satisfied with an appraisement may within 60 days after receipt of notice appeal therefrom to the orphans' court. This appraisement was filed on July 29, 1963, and the docket entries do not disclose that an appeal to the Orphans' Court of Allegheny County had been taken from the inventory and appraisement within the permitted period.

Finally, appellant's brief, the Commonwealth's brief, the lower court's opinion and the majority opinion all contain reference to "gross estate." The brief of amicus curiae filed under Rule 65 indicates, however, that the Commonwealth and the lower court invented this phrase and injected it into the calculations. Amicus quotes from our decision in *Pratt Estate*, 422 Pa. 446, 451, 221 A. 2d 117 (1966), that " 'Gross estate' is a term which is always used in connection with the estate of a decedent for purposes of Federal Estate taxation, but never used in connection with an estate under the law of Pennsylvania . . ." I disagree. *Camp's Estate*, 298 Pa. 405, 148 Atl. 496 (1930), an opinion by Mr. Justice SCHAFFER, made numerous references to the "gross estate," of the decedent involved in that litigation. Hence, the admonishment in *Pratt Estate* that "No decision of this Court and no statute of Pennsylvania defines or even uses the term 'gross estate,' " is patently in error and should not in the future be relied upon. "Gross estate" is often used by practitioners in referring to an estate being settled under the laws of the Commonwealth, and a definition is gradually developing which accurately defines and limits the term as applied to the administration of Pennsylvania estates.

DISSENTING OPINION BY MR. JUSTICE JONES:

With the views expressed in and the result reached by the majority opinion, I must respectfully disagree. The basis of my disagreement is that the majority opinion completely ignores the clear language of the taxing statute.

On June 15, 1961, the legislature enacted a new "Inheritance and Estate Tax Act"[1] which, inter alia,

---

[1] Act of June 15, 1961, P. L. 373, §101 et seq., 72 P.S. §2485-101 et seq.

exempted from inheritance taxation transfers of property passing from a decedent to or for the use of charities and charitable organizations.[2]

This appeal presents a narrow question; what is the proper method to calculate the inheritance tax where a decedent, by will, has directed the payment of specific and pecuniary legacies to certain individuals and then has created a trust of her residuary estate of which the ultimate beneficiary is a charitable organization? The resolution of that question depends upon the interpretation and construction of the language of the taxing statute. In my view, the majority opinion ignores the language of the taxing statute and relies upon case law which is based on the pre-1961 statutes the language of which is dissimilar to the language in the 1961 statute.

To illustrate, graphically, the instant problem and the opposing views of the several parties, the following illustration is helpful: A dies leaving a $100,000 estate; by will, A gives $10,000 to a friend and the residue to charity: A's debts and administration expenses total $5,000. Under the 1961 statute, the $10,000 gift is taxable, but the gift to charity is exempt from tax.

The method of calculation adopted by the Commonwealth (appellee) and the Orphans' Court of Allegheny County is as follows:

| "Gross estate | $100,000. |
|---|---|
| Deduct debts and expenses | 5,000. |
| Net distributive estate | $ 95,000. |
| Deduct pre-tax residue distributable to charity ($95,000 less $10,000) | 85,000. |
| Balance subject to tax at 15% | $ 10,000. |

---

[2] Until 1956, such transfers of property to charities were taxable for inheritance tax purposes. The taxing statute was then

The tax on the $10,000 legacy would be $1,500, and therefore the net distribution to the charity would be as follows:

| | | |
|---|---|---|
| Gross estate | | $100,000. |
| Less: | | |
| Debts and expenses | $ 5,000. | |
| Legacy | 10,000. | |
| Tax on legacy | 1,500. | 16,500. |
| Net for charity | | $ 83,500." |

The method of calculation urged by the Pittsburgh National Bank, Executor of Althea F. Remmel (appellant) is as follows:

| | |
|---|---|
| "Transfer subject to tax (the pecuniary legacy) | $10,000. |
| Deduct debts and expenses | 5,000. |
| Net value subject to tax at 15% | $ 5,000. |

The tax on the $5,000 would be $750, and therefore the net distribution to the charity would be as follows:

| | | |
|---|---|---|
| "Total estate | | $100,000. |
| Less: | | |
| Debts and expenses | $ 5,000. | |
| Legacy | 10,000. | |
| Tax on legacy | 750. | 15,750. |
| Net for charity | | $ 84,250."[3]. |

The crux of the problem is: what is the appropriate base or starting figure from which the deductions

amended to render such transfers nontaxable: Act of May 28, 1956, P. L. (1955) 1757, §1, as amended by the Act of July 11, 1957, P. L. 821, §1, 72 P.S. §2301.1. See: *Tracy Estate*, 403 Pa. 373, 170 A. 2d 93 (1961). Article III, §302 of the 1961 statute (72 P.S. §2485-302), continues such exemption.

[3] This illustration is taken from brief of amicus curiae, *Laing Estate*, pp. 2, 3.

338

should be subtracted? The starting figure of the Commonwealth ($100,000) *includes the property given to charity,* while the estate's starting figure ($10,000) *excludes the property given to charity.* The answer lies in the statute.

The *title* of the 1961 statute, providing "for the imposition of certain taxes upon the transfer of property passing from" a resident or nonresident decedent at the time of death, inter alia, defines and exempts from the tax, "transfers to certain persons or for certain purposes or of certain property", and recites that it— "provide[s] for the *valuation of property and interests in property, the transfer of which is subject to tax*" and "define[s] and allow[s] deductions from *the value of property, the transfer of which is subject to tax.*"[4] (Emphasis supplied). As I read this *title,* the *only* property to be *valued* is clearly and exclusively property the transfer of which is subject to tax and not property the transfer of which is not subject to tax and the deductions to be allowed are to be subtracted only from the value of property the transfer of which is subject to tax and not from the value of property the transfer of which is not subject to tax or a combination of both.

Moreover, the arrangement and plan of this taxing statute is illuminating as to the legislative intent. Article II (72 P.S. §2485-201 et seq.) lists specifically the transfers of property which are subject to taxation while Article III (72 P.S. §2485-301 et seq.) lists sixteen types of transfers of property which are not subject to tax, including therein transfers of property

---

[4] The Statutory Construction Act (Act of May 28, 1937, P. L. 1019, §54, 46 P.S. 554) provides: "The title and preamble of a law may be considered in the construction thereof." See: *Swatara Twp. v. Automatic Bowling Centre, Inc.,* 419 Pa. 482, 487, 214 A. 2d 725 (1965); *Commonwealth v. Derstine,* 418 Pa. 186, 189, 210 A. 2d 266 (1965).

to charities or for charitable purposes. The demarcation drawn in the statute between transfers which are and transfers which are not taxable reveals the intent of the legislature that, when the statute refers to "property the transfer of which is subject to tax", *only* the transfers delineated and described in Article II as "TRANSFERS SUBJECT TO TAX" are included within the term "property."

The most significant, and for the purpose of this appeal the *key,* section of the 1961 statute is §706 (72 P.S. §2485-706) which reads, inter alia, as follows: "The Secretary of Revenue *shall* have supervision over, and *make* or cause to be made, fair and conscionable *appraisements of property, the transfer of which is subject to tax under this act. . . .*"[Italics supplied]. My reading of §706 indicates that that section *clearly and unequivocally* empowers the Secretary of Revenue to appraise *only* the property of the decedent the transfer of which is subject to tax under Article II, supra, and that it does not authorize the appraisement of any property the transfer of which is not subject to tax under Article III. That which the Commonwealth has done in the instant case directly contravenes the legislative mandate embodied in §706.

The steps leading to the assessment of the tax are specifically described in the statute: first, the Secretary of Revenue makes an appraisal of the *"property, the transfer of which is subject to the tax."* (§706); second, the Register of Wills decides what shall constitute the allowable deductions (§707); third and lastly, the tax is assessed by the Register of Wills (§708). The latter step is simply mechanical in that it involves a subtraction of the allowable deductions (§707) from the appraised value of the property made under §706.

The approach of the majority opinion is that, in taking the first step leading to the assessment of the tax, the Secretary of Revenue appraises the value of

*all* the decedent's property regardless of whether such property is subject to taxation under the statute. The effect of the majority's view is to rewrite §706 and to give the Secretary of Revenue the duty and authority to appraise decedent's property, regardless of the taxability of the transfers of such assets. This, I submit, the Court cannot do.[5]

---

[5] The majority opinion relies upon *Frick's Estate*, 277 Pa. 242, 250, 121 A. 35, 38 (1923), *Tack's Estate*, 325 Pa. 545, 549, 191 A. 155, 157 (1937) and *Camp's Estate*, 298 Pa. 405, 148 A. 496 (1930). In *Frick*, decided under the Inheritance Tax Act of June 20, 1919, P. L. 521, the estate argued that, in ascertaining the "clear value" of the estate as the statute required, the Commonwealth erred in not deducting from the "gross value" of the estate the amount of inheritance taxes paid the Federal Government, other states, Quebec Province and Pennsylvania: the Court, noting that §2 of the 1919 statute specifically designated decedent's debts and administration expenses as deductible but expressly forbid the deduction of such taxes, refused to permit to be done indirectly that which was directly forbidden by the statute. *Frick* is entirely inapposite. It should be noted, however, that in *Frick*, our Court quoted with approval the language of *New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 350: "where 'the tax attaches to the estate before distribution—obviously it attaches to the whole estate, *except so far as the statute sets a limit*'" (277 Pa. at p. 252). In the case at bar, the 1961 statute has set a limit. As to *Camp*, we agree with amicus curiae's analysis: "Camp enounces the rule that the deductions may not be apportioned to specific assets—or to specific interests in assets—reflected in the appraisement but must be subtracted from the conglomerate value established by the appraisement. A corollary of this rule is that residuary principal has first call on any tax-saving made possible by the deductions. [The estate's] calculation procedure is completely consistent with the rule and its corollary: the deductions would be subtracted from the conglomerate value established by the appraisement, and the full benefit of the deductions would enure to residuary principal." In *Tack*, the sole question was whether certain bonds of the Delaware River Bridge Joint Commission were exempt from inheritance taxation and the Court simply held such bonds were not exempt. *Frick*, *Camp* and *Tack* all were decided when the statute prescribed a method of appraisal vastly different from that pro-

I am mystified by the unaccountable failure of the majority of this Court to meet squarely the only question raised on this appeal, i.e., the method of calculating the amount of the inheritance tax. The majority opinion states "the crucial factor is not the exempt nature of the charitable gifts but rather their derivation from the residuary estate", and concludes that it "is only the balance remaining in the residuary estate that decedent gave to the Foundation and there is no tax upon that gift" and that "the charitable gift must be viewed as a nontaxable transfer made from the net distributive estate, not property which is excluded from the estate itself." Such a tangential approach ignores the instant issue.

There can be no doubt that *whatever* the amount of the inheritance tax such tax must be paid out of the residue of the estate. Both the specific language of the decedent's will and §718(a) of the 1961 statute (72 P.S. §2485-718(a)) command such payment out of the residue. It is also true that, to the extent of such payment of inheritance tax, the amount eventually to be received by the charity will be diminished. Such facts have nothing to do with the present problem.

The question involved is not *who* pays the inheritance tax but rather the method of calculating the *amount* of such inheritance tax. Strangely and unaccountably, the majority opinion on this subject is silent. The estate seeks only that the exemption from taxation of transfers made by the decedent to the instant charity be honored in accordance with the statute. The estate does not object to the payment out of the residue of this estate of the amount of an inheritance tax which is assessed by an appraisement only of property the transfer of which is subject to tax. Its

---

vided in the 1961 statute and at a time when property transferred to charities was taxable and are clearly inapposite.

objection is that the payment of a tax based upon an appraised value of property which includes transfers which are or which are not subject to the tax is offensive to the taxing statute.

At the risk of repetition, the statute not only specifically excludes from inheritance taxation transfers of property made by a decedent to charity but §706 expressly limits and restricts the appraisal of the value of the estate upon which the tax is to be calculated to "property, the transfer of which is subject to tax." That the amount eventually to be received by the charity will be diminished by the payment of an inheritance tax properly arrived at under §706 is conceded. That the amount to be received by the charity will be further diminished by an assessment of a tax in violation of §706 constitutes the complaint of the estate.

The majority opinion stresses *Foster Estate*, 24 Pa. D. & C. 2d 182, as controlling. *Foster* was decided upon the basis of the language employed in statutes enacted prior to 1961 which statutes were repealed by the 1961 statute. Under the pre-1961 law, the inheritance tax was to be measured by "the clear value" of what the beneficiaries received and it was imposed upon the beneficiaries rather than upon the residue and, therefore, the debts and expenses and the tax lacked a common incidence. Under the statutory law in effect at the time *Foster* was decided, *Foster* was correct; by reason of the drastic changes effected by the 1961 statute, *Foster* is no longer apposite.

Believing that the calculation procedure advocated by the Commonwealth and upheld by the court below violates the clear language of the statute, I must register my objection to the adoption of such calculation procedure. Moreover, it is clear beyond any doubt that the legislature intended that transfers of property by decedent to charities or charitable organizations should not be subject to taxation, directly or indirect-

ly. The result reached by the majority not only violates the statutory language but completely ignores the clear legislative intent to favor charities.[6]

I would reverse the decree of the court below.

---

[6] Mr. Justice SIMPSON said in *Frick's Estate*, 277 Pa. 242, at page 248, supra, that he shared the conviction "that the State should have, as part of its public policy, a refusal to tax any gift for a 'purely public charity', since no valid reason can be given for taxing the public for the benefit of the public."