## Coane's Estate.

Argued December 2, 1932.   Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Harvey Geiger,* with him *Henry A. Craig* and *Howard M. Long,* for appellants, cited: Zimmerman v. Lebo, 151 Pa. 345; Sell's Est., 4 W. N. C. 14; Brewster's App., 7 Sadler 604; Rudolph's App., 10 Pa. 34; Reed's Est., 236 Pa. 572; Hickman's Est., 308 Pa. 230.

*Ernest Scott,* of *Pepper, Bodine, Stokes & Schoch,* for appellee, cited: Broadrick v. Broadrick, 25 Pa. Superior Ct. 225; Smith's App., 115 Pa. 319; Kline v. Kline, 57 Pa. 120; Jones's App., 62 Pa. 324; Taft v. Taft, 163 Mass. 467; Bowman v. Knorr, 206 Pa. 270; Mark's Est., 297 Pa. 290; Fridenberg's Est., 8 Pa. D. & C. 705.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1933:

On May 23, 1928, testator and appellee, now his widow, entered into a valid antenuptial agreement, by which each released the estate which the other might then or thereafter own, from all claims on his or her part, whether during his or her lifetime or after death, and testator agreed to pay to appellee "the sum of $15,000 per year, in equal monthly installments, unconditionally, for and during the term of her natural life, and in the event that [he] predeceased [her] said yearly sum shall be paid to [her] by his personal representatives, during the term of her natural life." By this agreement, when it was consummated by their marriage the next day, appellee became a creditor of testator (Jones's App., 62 Pa. 324), and could compel performance, by suit against him or his estate, if ever it became necessary so

to do. Accompanying the agreement was a paper, signed by appellee, stating that testator, "in addition to a life interest in his father's estate, was possessed outright of property having a value of at least $570,000." Evidently she obtained this information from him.

By his will, dated October 31, 1928, testator directed payment of all his "just debts" (which included, of course, his liability to appellee under the antenuptial agreement) ; made certain specific bequests, one of them being $10,000 to appellee, "to be paid to her immediately after my decease;" divided certain of his personal effects among his children and friends, and gave the residue thereof to appellee; and directed his executors to maintain and pay the rental of his apartment "until the expiration of the lease thereon at the time of my death, so that my wife may occupy the same without expense." The widow received the gifts above specified; but all the judges of the court below and all the parties in interest agree that this fact, standing alone, would not affect her claim under the antenuptial agreement, since there is nothing in that instrument denying her the right to receive them.

But appellants contend that, because she accepted those benefits, she must be deemed to have affirmed the will in its entirety, and hence can only receive the $15,000 per year, if and when the income of the residuary estate is sufficient for the purpose, since, as appellants allege, it is so provided in the residuary clause of the will. For the same reason, they assert that if there is a deficiency of income in one year, it cannot be made up out of the surplus of later years. The decree below denies the correctness of these contentions, and this raises the substantial question to be decided by us.

By the residuary clause, the balance of the estate is given to named trustees, appellee being one of them, "to hold and invest the same, and keep the same safely invested for the uses, persons and purposes following, that is to say: 1st. Out of the income therefrom to pay over

unto my wife, the sum of $15,000, in equal monthly installments, beginning immediately upon my death, in accordance with the terms of the antenuptial agreement entered into between my wife and myself dated May 23, 1928. 2d. As to the balance of the income from my residuary estate, to pay over unto my said wife...... one-half thereof for life." The other provisions of the will contain nothing of importance on the issues raised by this appeal.

After testator's death, and under the advice of counsel, appellee executed the usual formal declaration of her election to take under his will, and later amended it by inserting the words that it was made "without prejudice to my rights, interest, estate and privileges to and in a certain antenuptial agreement, entered into between me and the decedent in his lifetime, dated May 23, 1928, and reserving unto myself all rights, privileges, interest and estate vested in me by said antenuptial agreement." Each of these papers was a useless gesture. By the antenuptial agreement she debarred herself from taking against his will, the effect of which, if allowable, would simply have given her the proportion of his estate which she could have received under the intestate laws; and this, by the agreement, in consideration of the $15,000 to be paid to her annually, she expressly agreed she would not claim.

From the time of testator's death on March 7, 1930, until February 15, 1931, appellee was paid each month the $1,250 provided for in the antenuptial agreement, but since that date she has received nothing, because of the serious depletion of the income from the well-known cause with which we are all too familiar. At the audit of the executor's account, appellee claimed that the income on hand should be awarded to her on account of the arrearages due her under the antenuptial agreement, and that the balance of those arrearages should be paid to her out of the principal of the estate. This the auditing judge directed, and, on exceptions by appellants, the

court in banc divided equally, resulting, therefore, in a decree confirming the adjudication. From it these appeals were taken, appellants renewing here their contention as above set forth. To it we cannot assent.

The basis of that contention, as tersely stated in the dissenting opinion below, is as follows: "Where a testator, by his will, modifies the terms of an antenuptial agreement, and his widow elects to take under the will ......she has thereby assented to such modification." Unhappily for this contention, it has no basis upon which to rest. Of course, a testator may, if he chooses, put his widow to the election of determining whether or not she will accept the provisions of his will and abandon her rights under a valid antenuptial agreement; but it must appear, with at least reasonable clearness, that such was his intention, before she will be required to make such election. Here, the exact reverse appears. In the first place: "No presumption arises that a legacy is given in satisfaction of a debt where [as here] the will contains a provision for the payment of debts......or where the legacy is not in all respects as beneficial as the debt:" 40 Cyc. 1886. In the second place, instead of testator attempting to modify the agreement, he deliberately confirmed it just as it was originally written. It is as clear as anything can be, which is not expressly stated, that he intended appellee to get everything given to her by the agreement, and also the additional legacies stated in the will. True, as the event turned out, the income of his estate fell off so greatly that it does not now amount to the $15,000 a year. But this does not prove an intent to modify the agreement; on the contrary, it is only another result of the depression under which the entire civilized world is laboring. That he thought the income from his residuary estate would be more than sufficient to pay the $15,000 per year is clear from the two paragraphs of the residuary clause of the will, for he not only provided for its payment, but also directed distribution of an expected surplus beyond that amount.

More than this, those provisions in terms provide for the payment of the $15,000. All that testator was doing was giving instructions to his trustees with regard to its payment in full, evidently thinking, as every one else did, and as past experience seemed to justify, that the income from the residuary estate would be more than sufficient to pay this sum to appellee; but he makes no attempt therein to limit her to the income of the residuary estate. He directs the payment to be "in accordance with the terms of the antenuptial agreement." "In accordance with" cannot be construed to mean "in place of," or "as a substitute for," and this is made especially clear by the fact that the payments provided for are to be "in accordance with the terms" of the antenuptial agreement, not with some of them, but with all of them, the most important of which "terms" is that she is to get "the sum of $15,000 per year in equal monthly installments, unconditionally, for and during the term of her natural life, and in the event that [testator] predeceased [appellee] said yearly sum shall be paid to [her] by his personal representatives during the term of her natural life." By the provision of the will under consideration, testator was endeavoring to insure compliance "unconditionally" with those "terms," and not conditionally, as appellants now contend.

Viewed in this light, Bowman v. Knorr (No. 1), 206 Pa. 270, is controlling. There, by an antenuptial agreement, the widow was entitled to receive one-third of the income of her husband's estate for the term of her natural life. By his will he provided that she should receive that one-third while she was his widow, it being stated also that: "This will, so far as my wife is concerned, is according to antenuptial agreement dated October 6, 1876, hereto attached." We said at page 272: "The will gives her exactly the same interest, as to the amount of the estate she takes, as the agreement does. ...... The only change is in the period of enjoyment, from life to widowhood. Why this was made, or whether

it was merely an oversight, we need not consider in view of the express declaration that as far as his wife was concerned these instruments were in accordance with each other." It is not less so here, where the gift is "in accordance with the terms of the antenuptial agreement" which requires the $15,000 to be paid to her "unconditionally" each year during her life. The present case is, indeed, stronger than Bowman v. Knorr, supra, for it is clear testator desired the sum paid out of income in the first instance, because he believed there would be ample for the purpose. That the antenuptial agreement was attached to the will in that case, and in this one is not, is a matter of no moment, since here it is directly referred to in the will, and every one agrees as to what it provides.

The decree of the court below is affirmed, and each appeal is dismissed at the cost of the appellant therein.