## Thomas' Estate

*James J. Logan*, for Commonwealth, exceptant.
*Harvey A. Gross*, contra.

NILES, P. J., April 19, 1937.—The main dispute presented by the exceptions filed on behalf of the Commonwealth is as to the status of the widow of testator. The report of the auditor is based upon his conclusion that the claim of the widow must be considered as a debt

against the estate, and not as a transfer to take effect after the death of a testator or bargainor, which is subject to the tax. The contention of the Commonwealth is that the widow is a legatee, and therefore whatever she is entitled to receive from the estate is subject to the transfer inheritance tax. Solution of this dispute depends upon the proper construction and effect of the antenuptial agreement and the will referring to it.

Three days before the marriage of Chester Thomas to Grace D. Davis, now his widow, an antenuptial agreement was executed wherein Thomas agreed:

"At his death to provide the said Grace D. Davis, should she at said time be the wife of said Chester H. Thomas, with the right to the use and occupancy of the house No. 636 Linden Avenue, York, Pa., and shall place in trust the sum of $40,000 in some good bank or trust company, to be invested by said trustee, and the interest and income thereof to be paid to said Grace D. Davis for and during the life or widowhood of said Grace D. Davis; or at her death or remarriage the said property, No. 636 Linden Avenue, together with the $40,000 trust fund, shall be distributed as directed by the said Chester R. Thomas in his last will and testament."

Testator in his will, referring to the antenuptial agreement, provides:

"Third. In pursuance of my contract with my wife, Grace D. Thomas, under date of the 11th of August, 1924, I give, devise and bequeath to my said wife, Grace D. Thomas, formerly Grace D. Davis, the house and lot of ground known as No. 636 Linden Avenue, York, Pa., for and during her natural lifetime or widowhood. I also give to the Drovers & Mechanics National Bank of York, Pa., in trust, the sum of sixty thousand ($60,000) dollars, being twenty thousand ($20,000.00) dollars in excess of said agreement, to be invested by the said The Drovers & Mechanics National Bank and the interest and income thereof to be paid to my said wife, Grace D. Thomas, for and during her lifetime or widowhood. At her death or

remarriage the said property, No. 636 Linden Avenue, shall be sold by my hereinafter named executor and the amount realized therefrom, together with the sixty thousand ($60,000.00) dollars held in trust by The Drovers & Mechanics National Bank, as hereinbefore set forth, shall be distributed as directed in the residuary clause of this, my will."

After the payment of the expenses and all other debts other than the claim of the widow, there remained only a balance of $23,004.44, which was awarded by the auditor to the Drovers & Mechanics National Bank, trustee, to hold and invest under the antenuptial agreement.

Among the deductions as debts considered by the auditor and awarded out of the balance before the award of $23,004.44 to the trustee are two items excepted to by the Commonwealth, to wit, $1,769 to the York Trust Company for the settlement of certain notes, and $8,800 as interest, to which the widow claims to be entitled from the death of testator, July 15, 1933, being calculated at the rate of six percent on the $40,000.

The material points of law raised are: (1) Does the antenuptial agreement create a debt against this estate, and if so what is its character, amount, and its status as a deduction for transfer of inheritance tax purposes; (2) how much interest, if any, is presently due and payable to the widow on the trust funds referred to in the antenuptial agreement; (3) what, if any, transfer inheritance taxes are payable at this time.

The auditor came to the conclusion that the antenuptial agreement created a debt, and that it is impossible to determine the present worth of the debt owing to the widow by reason of its character until the widow dies or remarries; and that neither the trust fund of $40,000, nor any part thereof, is taxable for transfer inheritance taxes until the widow dies or marries.

As to the second proposition, the auditor concludes that the agreement expressly providing that Chester H. Thomas "at his death shall place in trust the sum of

$40,000 in some good bank or trust company to be invested by said trust company, and the interest and income thereof to be paid to said Grace D. Davis for and during the life or widowhood of the said Grace D. Davis," is an obligation upon which the estate is liable for interest from the time of testator's death.

As to the third point, the auditor concludes that the antenuptial agreement makes the widow a creditor of the estate to the extent of the amount of the income of the trust fund therein created during her life or widowhood, and therefore the entire amount thereof, to wit, $40,000, is presently deductible for transfer inheritance tax purposes; with the caveat that the widow has an estate for life or widowhood in the house and in the income of the $40,000 trust fund; and that upon her death or remarriage it follows that the transfer inheritance tax must be paid on the house, and also on such an amount of money as shall then be determined to be liable to such tax. The auditor's report contains an able analysis of the authorities leading him to his conclusions, and is so satisfactory to the court that we refer thereto as a part of this opinion. The auditor's conclusions of law seem to be sustained by the authorities to which he refers, and the reasoning thereupon. His first conclusion of law is that the antenuptial agreement entered into between testator and Grace D. Davis, who subsequently became his wife, is a valid contract and creates a debt against the estate of testator, and that this debt is the income from a $40,000 trust fund running for the period of the widow's life or widowhood, and that there is no transfer inheritance tax payable except on the items referred to in the third conclusion of law, which refers to the immaterial matters of kitchen furniture and range of a total appraisement of $460.60. His second conclusion of law holds that the widow is entitled to interest on the antenuptial agreement trust fund of $40,000 from the date of the death of testator at the rate of six percent. His third conclusion

of law holds that the only transfer inheritance tax presently payable is the tax due on the household and kitchen furniture appraised at $250.60, and on the diamond and sapphire ring appraised at $210, and that this tax must be paid by the widow in accordance with the calculation hereinafter set forth.

The carefully prepared and presented argument on behalf of the Commonwealth on the exceptions takes issue with the vital positions upon which the auditor's action rests. The first position taken by the Commonwealth is that the widow takes a life estate in the Linden Avenue property and income for life from the $40,000 as a devisee and legatee under the will, and not as creditor.

An analysis of the decisions cited does not sustain the position of exceptant: Coane's Estate, 310 Pa. 138, is illuminating as regards the status of the antenuptial agreement, wherein the prospective groom agreed to pay to the woman whom he afterwards married, and was his widow, $15,000 a year unconditionally for her life, and if he predeceased her to be paid by his personal representative during the term of her natural life. By that agreement, consummated by their marriage, the woman became a creditor of her husband, and could compel performance by suit against him or his estate. By his will testator directed payment of his just debts, which included, of course, his liability to appellee under the antenuptial agreement. Among other specific bequests was $10,000 to the widow "to be paid to her immediately after my decease." The claim of the widow was that she was entitled as a creditor by force of the antenuptial agreement to $15,000 a year, and if there was a deficiency of income in one year it must be paid out of the estate. From the time of testator's death the widow was paid each month $1,250 for the first year, and after that nothing because of the serious depletion of the income. She claimed that the income of the estate should be awarded to her on account of the arrearages due her under the antenuptial agreement, and that the balance of those arrearages

should be paid to her out of the principal of the estate. This claim was sustained by the orphans' court, three judges dissenting, and upon appeal was affirmed by the Supreme Court in an opinion by Mr. Justice Simpson, on January 3, 1933.

It was held that no presumption arises that a legacy is given in satisfaction of a debt where, as here, the will contains a provision for the payment of debts, or where the legacy is not in all respects as beneficial as the debts:

"It is as clear as anything can be, which is not expressly stated, that he intended appellee to get everything given to her by the agreement, and also the additional legacies stated in the will. True, as the event turned out, the income of his estate fell off so greatly that it does not now amount to the $15,000 a year. . . .

"More than this, those provisions in terms provide for the payment of the $15,000. All that testator was doing was giving instructions to his trustees with regard to its payment in full, evidently thinking, as every one else did, and as past experience seemed to justify, that the income from the residuary estate would be more than sufficient to pay this sum to appellee; but he makes no attempt therein to limit her to the income of the residuary estate. He directs the payment to be 'in accordance with the terms of the antenuptial agreement.' "

This case seems to establish the law that under an antenuptial agreement providing that the prospective husband will see to it that his wife, in consideration of the marriage, shall receive something either during his life or at his death, the result is a valid claim in the wife as creditor, and she does not stand in the position of a legatee. Miller's Trust, 313 Pa. 18, does not contradict Coane's Estate. We cannot see that the case of Commonwealth v. Guardian Trust Co., etc., 50 York 137, has any relevancy to the questions involved in this case.

An argument for the exceptions is that the Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2301, as

amended, says, in effect: (a) When the transfer is by will . . . a tax shall be . . . imposed . . . upon the transfer. (c) When the transfer is . . . made . . . by settlement . . . or gift made in contemplation of death . . . or intended to take effect in . . . enjoyment at or after such death. (d) When any person . . . comes into possession or enjoyment which is contingent or transferred by an instrument taking effect after the passage of this act, or any property transferred pursuant to a power of appointment contained in any instrument taking effect after the passage of this act.

The argument is that this Thomas antenuptial contract amounts to nothing more than an agreement to leave something by will, to wit, to establish a trust fund by will at the death of testator; and the contention of the Commonwealth is that the auditor erred in finding as a matter of law that neither it nor the value of the widow's possession was subject to the payment of transfer inheritance tax at this time.

As to the interest awarded to the widow from the time of testator's death, the Commonwealth asserts that any such claim must be against the trustee and not against the executor. It asserts that if the sum of $8,800 is added to the corpus, $23,004.44, it will necessarily increase the sum passing through the trustee, and that the claim for interest is not primarily a claim against the estate but must be made against the trustee who received and invests the fund. It is suggested that the widow was guilty of laches in not insisting that the balance in the hands of the executor be invested. It is said that the fiduciary individually, or the trustee individually, is liable for the interest, and not the estate. It is not shown how the Commonwealth has any interest relevant to this matter.

If the widow is entitled, as the auditor finds, we think correctly, that the only taxable transfer will be of what is left of the trust fund after the widow's debt has been met, the only question to arise will be what is the balance of the estate which will be transferred by the provisions of

the will eventually. The reasoning and conclusion of the auditor on this point seem to be correct and just. We approve the conclusions of the auditor.

By the agreement, consummated by their marriage, Mrs. Thomas became a creditor of her husband and of his estate. If he had not mentioned her in his will she would have been entitled to possession of the residence and the income from $40,000 during her widowhood, subject of course to the rights of other creditors. There being no other creditors to be considered in this adjudication, the present dispute regards the claim for inheritance tax.

The estate is insufficient, after payment of other debts and expenses, to place in trust the full $40,000, which the antenuptial contract binds Mr. Thomas and his estate to set aside to pay the interest and income therefrom to the widow. The misfortune that the estate is insufficient to establish the full sum of $40,000, according to the agreement, does not relieve the estate from the obligation to place in trust as much as remains after meeting other debts and expenses. The estate is bound to do this because of the antenuptial contract. The provisions in the will as to the trust are only in recognition of Mr. Thomas' obligation, which would have bound his estate as firmly had there been no such reference. If the agreement created an enforcible obligation against Thomas his recognition of it in his will did not change the widow's claim from a debt to a legacy.

The claim of the Commonwealth is based upon the supposed applicability of the Inheritance Tax Act of 1919, supra, and its amendments. The provisions of the law specified by the Commonwealth's attorney impose the tax upon the transfer of any property $(a)$ when the transfer is by will or intestate laws from any person dying possessed, etc.; $(c)$ when the transfer is made by bargain in contemplation of the death of the grantor, or intended to take effect in possession or enjoyment at or after such death; $(d)$ when any person comes into the possession or

enjoyment which is contingent or defeasibly transferred by an instrument taking effect after the passage of the act, or of any property transferred pursuant to a power of appointment contained in any such instrument.

The situation resulting from the obligation of the antenuptial agreement and the insufficiency of the estate to meet it practically requires the treatment of the less than $40,000 available, as security for the fulfillment of the obligation to Mrs. Thomas. All other debts have been met. So long as Mrs. Thomas lives and does not remarry the residuary legatees receive nothing. When she remarries or dies whatever remains of the trust fund then and only then is transferred by will. It is upon that unexhausted balance only that the tax is imposed. Such balance is transferred by will to the residuary legatees.

The argument for the Commonwealth is to the effect that if nothing taxable has yet been transferred by will, the fund nevertheless is now to be considered as a transfer made by bargain in contemplation of death. The rights of Mrs. Thomas, if she is a creditor, do not constitute a transfer by bargain made in contemplation of the death of the grantor. Her bargain was in contemplation of life and in consideration of marriage, and Mr. Thomas was a purchaser rather than a grantor, and his promise given in consideration of marriage was a debt and not a transfer. In contemplation of the inheritance tax laws the things taxed do not include money paid or held as security for liquidation of a valid debt.

The various exceptions filed on behalf of the Commonwealth are based upon objections to the fundamental theory upon which the auditor based his report and schedule of distribution. We are not convinced that the auditor's theory is not the correct one; and therefore all of the exceptions on behalf of the Commonwealth are dismissed.

And now, to wit, April 19, 1937, the exceptions filed March 24, 1937, to the amended auditor's report are dis-

missed, and the report and schedule of distribution are confirmed.

NOTE.—See Cherry's Estate, 29 D. & C. 378.