Pratt Estate.

Argued January 12, 1966.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Samuel H. High, Jr.,* with him *High, Swartz, Rob-
erts & Seidel,* for appellant.

*Walter Schachtel*, with him *Kiefer N. Gerstley*, and *Einhorn & Schachtel*, for appellee.

. *Lloyd A. Good, Jr.*, with him *Donald A. Gallager*, and *Jacoby & Maxmin*, for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, June 27, 1966:

Elizabeth M. Pratt, testator's second wife, appeals from the final decree of the Orphans' Court, dismissing exceptions to an adjudication which confirmed the account of the executors of the will of Leonard C. Pratt.

Pratt died testate on March 30, 1963, leaving a will dated November 29, 1956. Three months prior to his will, Pratt and his first wife, Grace W. Pratt, entered into a property settlement agreement. In paragraph 3 of this agreement, Pratt, in discharge of his duty of maintenance and support, agreed that during his wife's life, or until she should remarry, he would pay her specified sums of money semi-monthly, plus additional amounts based upon his annual income.

The parties further agreed in and by paragraph 5 of said agreement: "5. HUSBAND further agrees that he will specifically provide in his Last Will and Testament effective upon the date of his death that the said GRACE W. PRATT, herein referred to as WIFE, shall receive *one-third** (1/3) of his *gross* estate, *including life insurance policies covering* HUSBAND'S *life*, less the costs of administration debts and State and Federal Transfer Inheritance, Succession and Estate Taxes, or any other taxes in the nature thereof, all computed and paid on the entire estate and to be first deducted in computing the 1/3 interest of wife in the remainder. *The acceptance of said share of* HUSBAND'S *estate by* WIFE *shall be in complete release and acquittance of*

---

\* Italics throughout, ours.

*any and all obligations on the part of* HUSBAND'S *estate to pay the sums stipulated in Paragraph 3 hereof."*

After the execution of this property settlement agreement, Pratt was divorced by Grace W. Pratt and married the appellant. Pratt in the third paragraph of his will pertinently provided: "In fulfillment of the obligation I have assumed under Paragraph 5 of the Property Settlement between GRACE W. PRATT and me, dated the 30th day of August A.D. 1956, I give, devise and bequeath* one third of my *gross* estate, as determined after deducting therefrom the costs of administration, debts due by me at the time of my death, State and Federal Transfer Inheritance, Succession and Estate Taxes, absolutely and in fee simple."

Pratt's second wife Elizabeth elected to take against his will, and at the audit of the account of his executors claimed her intestate share of her husband's estate. Elizabeth's intestate share would of course be ascertained after the deduction (inter alia) of the claims of Pratt's creditors from his testamentary estate.

The Orphans' Court decided that, under the provisions of the property settlement between Pratt and Grace, his first wife, and under the provisions of his will, (1) Grace was entitled to receive one-third of the testator's gross estate less enumerated deductions, *as a creditor* and not as a legatee, and (2) that the *gross* estate to which Grace was entitled was testator's *"gross estate as determined for purposes of Federal Estate tax."*

In this appeal, Elizabeth challenges each of the Court's aforesaid conclusions or rulings.

The decree of the Orphans' Court, for reasons hereinafter stated, must be affirmed.

---

* The obviously implied words "to her" are omitted.

Grace was a Creditor

The law is well settled that where a testator in his will gives specified property or a share of his estate in exact or substantial compliance with the terms of his obligations under an inter vivos property settlement (or separation) agreement made with his wife, *that wife is a creditor* of his estate and not a legatee under his will. *Mills Estate,* 367 Pa. 504, 80 A. 2d 809. Cf. also, *Neller Estate,* 356 Pa. 628, 53 A. 2d 122; *Brown's Estate,* 340 Pa. 350, 17 A. 2d 331; *Mahoney Estate,* 356 Pa. 358, 52 A. 2d 328; *Coane's Estate,* 310 Pa. 138, 165 Atl. 2; *Bowman v. Knorr (No. 1),* 206 Pa. 270, 55 Atl. 976. These cases in principle control and rule this case and sustain the decision of the Orphans' Court that Grace is a creditor and not a legatee.

While few, if any, wills have a twin brother, *Mills Estate,* 367 Pa., supra, is factually close and in principle controlling.

In *Mills Estate* the husband and wife entered into a written separation agreement in which the husband agreed (a) to make specified monthly payments in recognition of his duty of support and (b) to leave her in and by his will all his estate. Thereafter the parties were divorced, but the testator continued making the specified monthly payments until his death. He left a will which pertinently provided: "ITEM 3: I give and bequeath my entire estate to Anna Irene Mills. This bequest is made in accordance with a certain agreement entered into between Anna Irene Mills and myself dated May 17, 1946."

The Commonwealth contended that this was a legacy which was subject to inheritance tax. We rejected this contention and held that if the debt was "contracted bona fide and for an adequate and full consideration in money or money's worth," Anna Irene Mills would take *as a creditor* that portion of Mills Estate for

which he had received "full and adequate considera-tion in money or money's worth* in exchange for his agreement."

## Gross Estate

Testator's will clearly shows an intention on his part to fulfill the obligations which he had contracted under paragraph 5 of the property settlement agreement.

"Gross estate" is a term which is always used in connection with the estate of a decedent for purposes of Federal Estate taxation,** but never used in connection with an estate under the law of Pennsylvania (except in the Pennsylvania Estate Tax Apportionment Act***). In Pennsylvania, the term "gross estate" is, we repeat, never used to mean assets which are includable in an accounting by an executor (or administrator) or even to define the assets which belong to, or are a part of, a decedent's estate. In other words, if the parties to this agreement had meant to give the wife *only* one-third of the estate which came into the possession of the husband's executors and which was subject to their accounting and to State inheritance taxes, they would never have used the words "gross estate." This is made especially clear by the fact that

---

* We remanded in order that the Orphans' Court could determine this fact.

** Even in the field where the term "gross estate" is used, its exact meaning not infrequently puzzles many people including tax experts inside and outside the Government.

*** No decision of this Court and no statute of Pennsylvania defines or even uses the term "gross estate," with this one exception, namely, the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, as amended, 20 P.S. §881, where the term "gross estate" is used and defined as meaning "all property of every description required to be included in computing the [federal] estate tax."

if that had been their intention, the husband, after the agreement, could easily have deprived his wife, by various legal devices, of a very large part of his property and estate.

We therefore hold that Grace W. Pratt is entitled to receive as a creditor one-third of the *gross estate* of Leonard C. Pratt, "including [all] life insurance policies covering HUSBAND'S life," valued at the time of his death,* less the deductions spelled out below. This would be computed by first adding together the following assets:

| | |
|---|---|
| Pratt's testamentary estate, including life insurance policies in the amount of $90,558.56 payable to his estate ...... | $193,358.45 |
| Life insurance policies which were payable to named beneficiaries .......... | 12,712.00 |
| Real estate held in the name of Pratt and his second wife Elizabeth as tenants by the entireties .............. | 34,100.00 |
| A jointly-owned bank account in the name of Pratt and his second wife Elizabeth ......................... | 418.47 |
| | $240,588.92 |

From this figure of $240,588.92, there must be deducted "the costs of administration, debts [except, of course, the debt which is created in favor of Grace W. Pratt by this Agreement] and State and Federal Transfer Inheritance, Succession and Estate Taxes, or any other taxes in the nature thereof, all computed and paid on the entire estate . . ." When this net figure is

---

* The Federal Estate tax return reveals no property held jointly by testator and his first wife, Grace W. Pratt, at the time of testator's death.

ascertained, Pratt's first wife, Grace W. Pratt, is entitled to claim under this agreement one-third of it as a creditor of his estate.

Decree affirmed, each party to pay own costs.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

The rights of Grace W. Pratt are governed by the clause contained in paragraph 5 of the property settlement agreement between her and her former husband. This clause provided: "5. HUSBAND further agrees that he will specifically provide in his Last Will and Testament effective upon the date of his death that the said GRACE W. PRATT, herein referred to as WIFE, shall receive one-third (1/3) of his gross estate, including life insurance policies covering HUSBAND's life, less the costs of administration, debts and State and Federal Transfer Inheritance, Succession and Estate Taxes, or any other taxes in the nature thereof, all computed and paid on the entire estate and to be first deducted in computing the 1/3 interest of wife in the remainder." The problem which remains, therefore, is to determine exactly what Grace Pratt is entitled to receive. We acknowledge that the specific language "one-third (1/3) of his gross estate" and what follows as set forth in the agreement is hardly an example of careful draftsmanship and affords no useful clue as to what was in Leonard Pratt's mind nor what Grace Pratt understood the agreement to be. However, since we must come to some decision, I disagree with the majority's interpretation of the quoted language as referring to the "gross estate as determined for purposes of Federal Estate tax." As the majority seems to recognize, to refer to Federal Estate Tax concepts under these circumstances is fraught with pitfalls because of the uncertainty of the federal tax definition of "gross es-

tate." Yet, in its statement of the holding, the majority applies the tax definition to the words generally.

The complexity of the federal law with reference to determining the gross estate for federal estate tax purposes is well illustrated by the sheer size of that portion of the United States Code Annotated devoted to the problem. Part III of Subtitle B of the Internal Revenue Code of 1954 (IRC) sets forth the statutory provisions governing the determination of the contents of the gross estate. These provisions and the annotations of the holdings of the cases interpreting and defining the gross estate sections of the Code are encompassed in 219 bound pages and 56 pocket part pages of 26 U.S.C.A. It is thus apparent that "gross estate" has been and in the future will continue to be, a source of involved litigation. Consequently, there is an immense and growing body of intricate law being developed for the purpose of determining what is meant by "gross estate" as defined in §§2031 through 2044 of the IRC.

Suppose, for example, the value of the estate's assets is less on the alternate valuation date a year after death than on the date of death. If the executors were to choose the alternate valuation in order to reduce the estate tax, Grace Pratt would surely complain. If they were to choose the date of death values, testator's second wife would object because of the resulting additional taxes. IRC §2032 permits this delayed valuation of the assets of the estate, and could certainly provoke litigation.

While the majority opinion sets forth the sums in the "gross estate", it does not indicate whether any option under §2032 has been elected, or whether the executor has been allowed to make an election, or, if having done so for federal tax purposes, he is here bound by that election.

And further, would the majority include as life insurance within the meaning of gross estate for Federal Estate Tax purposes the proceeds of a policy irrevocably transferred to the second Mrs. Pratt with no incident of ownership retained by the defendant after Mr. Pratt's remarriage? IRC §2042 does not require the inclusion of the proceeds in the gross estate. Yet, a reading of the agreement would appear to require its inclusion. Such a device could be used to deprive the first wife of as much property as any device which the majority could construct under a more practical definition of "gross estate." The majority's self-conjured fear that decedent could have deprived his first wife of property rightfully hers is insupportable. Had decedent transferred property in fraudulent avoidance of the agreement, the wife had recourse to the law to preserve her interest.

The generality of application of the tax definition of "gross estate" resulting from the majority's reasoning invites an inquiry into the following situations:

IRC §§2033 and 2037 would require, in the case of a testator who had settled an irrevocable trust upon two daughters to pay income to each and at the death of each to pay the corpus supporting her share of the income to her descendants, reserving to testator only a power to appoint the corpus by will should both daughters predecease him without leaving descendants, that the entire corpus be included in the testator's gross estate even though the daughters survived him. *Fidelity-Philadelphia Trust Company v. Rothensies*, 324 U.S. 108 (1945).

IRC §2035 requires an inquiry into the motivation of the decedent's inter vivos gifts. Suppose testator made substantial inter vivos gifts which §2035 would make includable in his gross estate for federal estate tax purposes but not for probate purposes. If the tax on these gifts were sufficiently large to deplete the

probate estate so that it would be insufficient to pay the creditor-wife's one-third, would the majority require the donees to return the gifts?

As recently as March 23, 1966, the definition of "gross estate" for federal tax purposes was being developed. In *United States v. O'Malley,* 383 U.S. 627, 34 L.W. 4285 (1966), the Supreme Court held that where settlor created an irrevocable inter vivos trust of which he was one of the three trustees and the trust provided that the trustees, in their sole discretion, might pay trust income to the beneficiary or accumulate the income in which event it became principal, settlor's gross estate for federal estate tax purposes included that part of the principal accumulated from income as well as the funds originally transferred to the trust, although the estate did not include any of the distributed income. This case not only illustrates that the federal law defining "gross estate" is an ever changing one, but as applied to the instant case it could have defeated the expectations of the parties.

As I have said, the contract language is anything but clear. But if, as the majority holds, testator meant his gross estate as determined for federal estate tax purposes, his reference to insurance policies would have been unnecessary, since by IRC §2042 insurance proceeds on policies owned by decedent are includable in his gross estate as determined for federal tax purposes.

Hence, I would conclude that Leonard Pratt agreed to devise to Grace in satisfaction of her claim under the agreement one-third of his net probate estate (with no diminution for the debt to Grace) plus one-third of the proceeds of the insurance on his life not otherwise includable in his probate estate.

I grant that there are obvious difficulties in any interpretation of such unclear and indefinite language, but I think that it is safer to adopt my interpretation,

since we would be dealing with terminology and practices with which we have experience. While the majority opinion studiously avoids clearly stating that it is imposing all the rules of the tax definition of "gross estate" on the instant agreement, the computations which the majority set forth are plainly those which might be used in computing the gross estate as determined for purposes of Federal Estate Tax. I use the conditional since one familiar with the Estate Tax provisions would recognize that §2040 of the IRC requires that the portion of jointly-held property includable in the deceased participant's gross estate depends upon what fraction of the property was contributed by each individual. However, the majority sets forth no facts supporting the figures arrived at in items three and four of its computation, and the record discloses none.

I believe that the record is insufficient to allow any computation to be made in this matter or to permit us to gauge the effect of my conclusion. Accordingly, I would remand this record to the lower court for a determination of what assets belong in the estate as inventoried by the personal representative and diminished as set forth in the agreement, and for an order for payment to Grace from the estate of an amount equal to one-third of decedent's thus diminished estate plus one-third of his life insurance proceeds.

I dissent.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I am not persuaded that when the testator caused his will to be prepared and used the words "gross estate" therein, that he was thinking in terms of his estate as computed for federal estate tax purposes, or intended that his first wife would receive one-third of the total so computed. Moreover, interpreting the

458

words "gross estate" in such a manner (which is what the lower court did and said so and what this Court does without saying so) could lead to an unfair and unrealistic result, if not in this case then in one that may come tomorrow.

For instance, if the testator at the time of his death held title to property jointly with his first wife with the right of survivorship attached, title to this property would pass completely to the first wife by operation of Pennsylvania law. Its total value would also be included in the computation of the value of the estate for federal estate tax purposes. Under the Majority's construction of the present will, the first wife would receive not only complete title to the property involved but, in addition, one-third of its value as her share of the gross estate as computed for federal tax purposes. In other words, she would receive four-thirds of the value of the one property. I cannot conceive that the testator intended any such thing.

I dissent.