535 A.2d 125

## In the Matter of the ESTATE OF Anthony BARILLA, Deceased.

## Appeal of Teresa Young BARILLA, a/k/a Theresa Young Barilla, Widow of the Decedent.

Superior Court of Pennsylvania.

Submitted July 27, 1987.

Filed Dec. 7, 1987.

Joseph V. Agresti, Erie, for appellant.

Before CIRILLO, President Judge, and HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's order determining the parties' respective rights as established by an antenuptial agreement and the laws of intestacy. Appellant, the decedent's widow, contends that the lower court erred in concluding that (1) the antenuptial agreement provided for her to receive a one-fourth share of decedent's estate; (2) appellees, decedent's children, did not breach the antenuptial agreement; (3) appellant is only entitled to a life estate in the marital domain and not the net rental income from that property; (4) appellant is not entitled to share in

the income from the assets of decedent's estate; and (5) she is not entitled to receive the accrued interest on her share of the estate. For the reasons set forth below, we affirm the order of the court below.

■ Prior to their marriage on June 19, 1959, decedent and appellant entered into an antenuptial agreement which was drafted by decedent's attorney. Decedent died intestate on December 7, 1971 and was survived by appellant and his three children by a prior marriage. On January 19, 1972, appellee Dominic Barilla, one of decedent's children, filed a petition to have letters of administration issued to him in an effort to be appointed administrator of decedent's estate. Appellant contested the appointment and requested that she be appointed administratrix. The parties subsequently agreed to allow decedent's bank to act as administrator. After several attempts at settlement negotiations, the bank declined to proceed as administrator because the parties failed to fully cooperate. On March 1, 1984, Barilla, again, filed a petition to have letters of administration issued to him. Following a hearing, the court appointed the respective attorneys for the parties as co-administrators of the estate. Thereafter, when the co-administrators could not agree on the values of the assets of the estate, appellant's attorney filed a petition for an accounting and filing of inventory. Following a hearing, the lower court held that the antenuptial agreement was valid and that appellant was a creditor of the estate entitled to a one-fourth share of the estate. The parties filed post-trial motions and this appeal followed.[1]

Appellant first contends that the lower court erred in not determining that the intent of decedent was to provide her

1. Although neither party questioned the propriety of an appeal from the lower court's order, our Court may raise issues of appealability and jurisdiction *sua sponte*. *See Wertz v. Anderson,* 352 Pa.Superior Ct. 572, 575, 508 A.2d 1218, 1220 (1986). It is well-settled that an appeal will lie only from a final order unless otherwise permitted by statute. *Praisner v. Stocker,* 313 Pa.Superior Ct. 332, 336, 459 A.2d 1255, 1258 (1983). A determination whether a petition for an accounting and a filing for an inventory can be considered a final and appealable order must be the result of a practical, rather than a

with a one-third share of the estate in accordance with the laws of intestacy rather than a one-fourth share as stated in the antenuptial agreement.[2] We disagree.

One of the chief purposes of an antenuptial agreement is to alter the statutory provisions that the Pennsylvania legislature has enacted for the benefit of the surviving spouse. *Emery Estate*, 362 Pa. 142, 147, 66 A.2d 262, 265 (1949); *In re Estate of Geyer*, 338 Pa.Superior Ct. 157, 165, 487 A.2d 901, 905 (1985). It is an instrument of contract which entails the private undertakings between a husband and wife. Accordingly, such an agreement is governed by the law of contracts. *Hollman v. Hollman*, 347 Pa.Superior Ct. 289, 300, 500 A.2d 837, 843 (1985). A court's review of a contract is confined to its interpretation of the agreement. *Steuart v. McChesney*, 498 Pa. 45, 51, 444 A.2d 659, 661 (1982).

> In interpreting a contract, the intention of the parties must be ascertained from the complete writing and each and every part of it must be taken into consideration and given effect if reasonably possible.

*Laub v. Laub*, 351 Pa.Superior Ct. 110, 116, 505 A.2d 290, 293 (1986); *see International Org. Masters, Mates and Pilots of America, Local No. 2, v. International Org.*

technical, construction and it must be found to be collateral to the main cause of action. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1941); *Bell v. Beneficial Consumer Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975). In the case at bar, the lower court's holding that appellant is a creditor by the terms of a valid antenuptial agreement has finally adjudicated her status in these proceedings along with her rights with regard to the estate. Accordingly, we hold that the order determining appellant's status and respective rights, is "collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp., supra* 337 U.S. at 546–47, 69 S.Ct. at 1225–26.

2. We note that appellant does not challenge the validity of the antenuptial agreement on appeal, and thus we are prevented from reviewing this potentially meritorious argument. *See Rago v. Nace*, 313 Pa.Superior Ct. 575, 576, 460 A.2d 337, 338 (1983) (issue not raised in the statement of issues will not be addressed on appeal). Accordingly, we offer no opinion on the merits of such an argument.

*Masters, Mates and Pilots of America, Inc.,* 497 Pa. 102, 108–09, 439 A.2d 621, 624 (1981).

Here, the antenuptial agreement provides that:

WHEREAS the intended husband desires to marry the intended wife but *desires to limit her interest in his estate* and

WHEREAS the intended wife desires to release all her inchoate interest and any other rights granted to her by the laws of Pennsylvania; and ...

If the intended husband dies first the intended wife shall inherit and receive an undivided one-fourth (¼) part of the estate of said intended husband absolutely, *it being the true intent and meaning hereof that she, the said intended wife, shall, in such event, receive the same share or portion of the estate of the said intended husband as would be received by each of the children of intended husband in the event of his death intestate,* he at this time having three children. The intended wife does hereby forever remise release and quit claim all right, title and interest which she might or otherwise could have in and to the personal or real estate of said intended husband as his widow under the intestate laws of Pennsylvania, and does hereby agree to accept and receive the share of said estate hereinabove mentioned to wit, the undivided one-fourth (¼) part thereof, in full settlement of all such claims and demands as she might or otherwise could have as widow of the said intended husband in the event of his death in the manner hereinafter set forth.

Antenuptial Agreement at 1–2 (emphasis added). This language indicates that decedent's purpose in executing the agreement was to limit appellant's statutory rights upon his death and to prevent her from claiming her share as either a testate or intestate beneficiary.

Appellant maintains that the decedent's true intention is reflected in the language of the antenuptial agreement where it states that appellant "shall ... receive the same share or portion of the estate ... as would be received by each of the children of [decedent] *in the event of his death*

*intestate ...*" Antenuptial Agreement at 1–2 (emphasis added).

■ To determine whether the parties intended for appellant to receive a one-fourth share, the court must consider the complete writing. *See Laub v. Laub, supra.* The agreement when read as a whole shows that decedent intended to limit appellant's share of his estate and to preclude her from taking her intestate share upon his death. The specific language that appellant refers to is not sufficient to overwhelm decedent's intention that his spouse and children share equally in his estate. After considering the intention of the parties and reviewing the language in the agreement, we conclude that the trial court did not err in determining that appellant was not entitled to a one-third share under the agreement.

■ Appellant next contends that the lower court erred in not finding that the appellees breached the antenuptial agreement by failing to comply with its terms, thus rendering the agreement unenforceable. The antenuptial agreement granted appellant a life estate in the marital residence and designated appellees as the remaindermen. Appellant claims that appellees padlocked the entrance to the property and have, in effect, deprived her of her life estate. She maintains that appellees' action constituted a breach of the antenuptial agreement.

■ It is a well established principle of law that a contract cannot legally bind persons not party thereto. *Cumberland–Perry Area Vo–Tech School v. Bogar & Bink,* 261 Pa.Superior Ct. 350, 357, 396 A.2d 433, 435 (1978); *Chambers Dev. Co. v. Commonwealth ex rel. Allegheny County,* 81 Pa.Commonwealth Ct. 622, 626, 474 A.2d 728, 731 (1984). Generally, under Pennsylvania law, a person not a party to a contract cannot be held liable for breach. *Hampton v. Holmesburg Prison Off'ls.,* 546 F.2d 1077, 1082 n. 4 (3d Cir.1976).

Here, appellant alleges that appellees have breached the antenuptial agreement by their actions, which prevented her performance of the contract. Appellees, however, are not

parties to the antenuptial agreement nor are they intended third party beneficiaries. Moreover, appellant has failed to allege that appellees have a contractual duty under the antenuptial agreement. The general principles of contract law dictate that appellant cannot seek to legally bind persons who are not parties to the antenuptial agreement. *Cumberland–Perry Vo–Tech School v. Bogar & Bink, supra; Chambers Dev. Co. v. Commonwealth ex rel. Allegheny County, supra.* Therefore, because appellees are not parties to the antenuptial agreement and have no duties under the agreement, we conclude that appellant cannot maintain a cause of action for breach of contract against appellees.[3]

█ Appellant next contends that, because the antenuptial agreement granted her a life estate in the marital residence, the lower court erred in determining that she is not entitled to the net rental income from the residence during the period when she was absent from the property. The antenuptial agreement provides:

In consideration of the premises, the intended husband does hereby grant unto the intended wife the right to live in the first floor apartment on premises known as 902 West 17th Street, Erie, Pennsylvania, for and during her natural life, provided, however, during such occupancy she shall pay one-half of the costs of the maintenance and repair of the premises and one-half of all taxes and assessments that might be levied against said property. Her right to live in said apartment shall begin at the time of the death of the intended husband. This right to live on said premises shall be extinguished upon her failure to occupy the premises immediately after said death or upon her removal therefrom any time there after.

---

**3.** We note that appellant's allegations that the actions of appellees prevented her from meeting the legal obligations imposed upon her by the terms of the antenuptial agreement properly sounds in tort rather than contract. Appellant's proper remedy would have been an action for tortious interference of contract. *See Birl v. City of Philadelphia Elec. Co.,* 402 Pa. 297, 300–01, 167 A.2d 472, 474 (1960) (one who, without privilege to do so induces or otherwise properly causes a person not to perform a contract with another has set forth a cause of action for tortious interference of contract).

Antenuptial Agreement at 2. Based upon this provision, the lower court concluded that appellant was entitled to a life estate in the marital residence but was not entitled to rental income because appellant was a creditor of the estate and not entitled to receive income acquired from those assets.

Generally, an act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties. *American Leasing v. Morrison Co.*, 308 Pa.Superior Ct. 318, 326, 454 A.2d 555, 557 (1982). Conditions in a contract need not take on any particular form to create a condition of duty. *Id.* To determine the purpose of the conditions, the general rules of contract interpretation are applied and the intention of the parties is controlling. *Id.*

Here, it is clear on the face on the antenuptial agreement that the deceased and appellant contracted for the existence of a life estate contingent upon appellant's compliance with certain conditions. Under the terms of the agreement, appellant's life estate came into existence only if she occupied the premises immediately after decedent's death. Antenuptial Agreement at 2. Furthermore, the life estate was defeasible should appellant fail to pay one-half of all property taxes and maintenance costs or cease to reside in the home. *Id.*

Based on the foregoing, we conclude that it was the intention of decedent and appellant to create and provide for the continuance of a life estate only upon appellant's compliance with the terms in the agreement. *See American Leasing v. Morrison Co., supra.*

Our review of the record indicates that appellant did not occupy the property after decedent's death and has not resided in the marital home for the last seventeen years. N.T. September 9, 1986 at 39. Appellant argues that the reason she has not resided in the marital residence is because appellees padlocked the entrance to the home shortly after decedent's death. We note, however, that the lower court found that appellant had access to two other entrances of the house and failed to make any attempts at correct-

ing her situation for the last seventeen years. Trial Court Opinion October 9, 1986 at 11. Additionally, appellant has failed to contribute to the payment of taxes or the costs of maintenance as provided in the agreement. N.T. September 9, 1986 at 41. Accordingly, because appellant failed to perform her contractual obligations entitling her to a life estate dating back to 1971, she is not entitled to rental income derived from that property for the last seventeen years.[4]

■ Appellant next contends that her one-fourth share of the estate should include all income derived from assets of the estate. Appellant maintains that the intention of the agreement was that she share in the estate and receive any profits and income that flowed from the assets of the estate before distribution.

■ An antenuptial agreement establishes the surviving spouse as a creditor of the deceased spouse's estate rather than as an heir. *Zeitchick Estate*, 426 Pa. 171, 175, 231 A.2d 131, 133 (1967); *Pratt Estate*, 422 Pa. 446, 450, 221 A.2d 117, 119 (1966); *Durst v. Frick*, 222 Pa.Superior Ct. 290, 294, 295 A.2d 125, 127 (1972). Under Pennsylvania law, the net income earned on an intestate decedent's estate prior to distribution is distributed to his or her heirs. *Mellott v. United States*, 257 F.2d 798, 800 (3d Cir.1958). Additionally, rental income that accrues from decedent's real property passes to the heirs of an intestate's estate and not to the creditors of that estate. *Bakes v. Reese*, 150 Pa. 44, 46, 24 A. 634, 635 (1892). In the event that a decedent's assets are not sufficient to satisfy the claims of creditors, Pennsylvania law provides that the administrator may acquire control over the real property and the income derived

---

**4.** The lower court granted appellant the right to resume her life estate in the marital residence should she so desire but denied her entitlement to any rental income generated from that property. The lower court apparently bestowed upon appellant the life estate based solely on equitable considerations. As neither party has challenged this part of the lower court's order, we may not address the lower court's determination in this matter. *See Commonwealth v. Unger*, 494 Pa. 592, 595, 432 A.2d 146, 147 n. 1 (1980) (issue not preserved for appellate review where it is not included in the statement of questions or raised on appeal).

from it to satisfy the creditors' claims. *Wolfe v. Lewisburg Trust & Safe Deposit Co.*, 305 Pa. 583, 584, 158 A. 567, 568 (1931).

Here, there is an antenuptial agreement and, therefore, appellant assumes the status of a creditor of decedent's estate. *See Zeitchick Estate, supra.* The real estate holdings of decedent and any income derived from those holdings are earmarked for decedent's heirs. *See Mellott v. United States, supra.* As a creditor, appellant is not entitled to rental income. If appellant's claims cannot be satisfied with the personal property of decedent, the co-administrators of the estate are vested with statutory powers which enable them to seek control over decedent's real estate holdings in an effort to satisfy the debts of the estate. *Wolfe v. Lewisburg Trust & Safe Deposit Co., supra.* Accordingly, appellant's contention that she is entitled to an outright share in the income derived from the assets of decedent's estate, prior to a determination in that there are insufficient funds to satisfy her claim, is meritless.

Appellant's final contention is that because she is a creditor of the estate, she is entitled to interest earned on her share of the estate since 1972. The lower court held that appellant's share should be calculated at the current market values in order to reflect the increased value of appellant's share and not the market values that prevailed in 1972. Appellant argues that under *Brown's Estate*, 340 Pa. 350, 17 A.2d 331 (1941), she is entitled to have interest calculated on her share from the time that she could demand payment of her claim. We disagree.

In *Brown's Estate*, the testator's widow contended that she was entitled to receive interest on her share of the estate left to her in accordance with an antenuptial agreement and a will. *Id.*, 340 Pa. at 352, 17 A.2d 331, 332. The court specifically looked to the language of the antenuptial agreement and the will to determine if the testator intended for his wife to receive interest on her share of his estate. *Id.*, 340 Pa. at 353, 17 A.2d 331, 332. The court acknowledged that the widow was a creditor of the estate and as a

creditor was entitled to interest on her share from the time she could demand payment provided that the testator did not express a contrary intention either in the will or antenuptial agreement. *Id.*, 340 Pa. at 352–53, 17 A.2d 331, 332. The court found that the testator expressly contemplated a specific time of payment and did not intend to enlarge the widow's share by way of interest or otherwise. *Id.*, 340 Pa. at 353, 17 A.2d 331, 332.

Here, an antenuptial agreement contains a provision, whereby, should there be insufficient cash to pay appellant her share, the heirs of the estate shall pay the balance, "in monthly installments of $125.00 *without interest.*" Antenuptial Agreement at 2 (emphasis added). The plain language of the agreement thus indicates that decedent's intention was to exclude interest from appellant's share of the estate. Under the principle espoused in *Brown's Estate, supra,* appellant's claim for accrued interest on her share of the estate must be disallowed because the agreement expressly states that she is not entitled to interest. In light of the fact that the antenuptial agreement contains specific language to the contrary, we conclude that appellant's claim that she is entitled to interest must fail.

For the above-stated reasons, we affirm the order of the lower court.

Order affirmed.