631 A.2d 1353

**JOSEPH PAOLINO & SONS INC., Appellant,**

**v.**

**CITY OF PHILADELPHIA, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1993.

Filed Oct. 14, 1993.

Bruce L. Phillips, Philadelphia, for appellant.

Patrick K. O'Neill, Philadelphia, for appellee.

Before OLSZEWSKI, JOHNSON and HUDOCK, JJ.

OLSZEWSKI, Judge:

Joseph Paolino & Sons Inc., ["JPS"] appeals from the order entered October 19, 1992, in the Court of Common Pleas of Philadelphia County, granting summary judgment in favor of the City of Philadelphia ["the City"]. We affirm.

Central to this dispute is the parties' waste disposal contract. JPS and the City entered into a contract in December

of 1985 for the hauling and disposal of Philadelphia incinerator residue from December 1985 through June 1987. The relevant contract provisions are the following:

The Contractor shall assume all handling, transportation, disposal, permit and licensing costs. *Hauling and disposal methods shall be in strict accordance with the regulations of the governing state and local environmental agencies. At time of bid, the Contractor shall provide evidence as to the approval of the appropriate regulatory agencies to dispose sanitary residue in the sanitary landfill listed in the bid.*

R.R. at Exhibit A(1) (emphasis supplied). In addition, the Service Contract specified that

Contractor agrees to furnish ... subject to the conditions therein set forth ... All work performed and *services rendered shall strictly conform to all laws, statutes and ordinances and the applicable rules, regulations, methods and procedures of all governmental boards, bureaus, offices, commissions and other agents.*

R.R. at Exhibit A(4) (emphasis supplied).

In its bid, JPS submitted that its disposal site would be a Virginia landfill. JPS notified the City in January 1986, however, that a Virginia landfill different from the one specified in the bid would be used. Subsequently, that landfill was enjoined from accepting any further waste. Thus, JPS arranged for different landfills across the United States to accept the incinerator ash. The City made seven payments under the contract to JPS, between February 1986 and August 1986.

In June of 1986, JPS subcontracted with Amalgamated Shipping Corporation, a Bahamian company, for transport of incinerator ash from Philadelphia to the Bahamas for disposal. In August of 1986, the Bahamian ship "Khian Sea" was loaded with incinerator ash and departed Philadelphia for the Bahamas. The Bahamas refused to accept the waste. Thereafter, the Khian Sea sailed the seas from Central America to Yugoslavia to Sri Lanka in search of a disposal site for the

incinerator ash. When the Khian Sea finally docked in Singapore in the fall of 1988, the ship's holds were empty. JPS failed to produce any evidence that it satisfied its obligation to properly dispose of the incinerator ash hauled by the Khian Sea, contrary to the contract terms requiring disposal in accordance with "governing state and local environmental agencies" and "all governmental boards, bureaus, offices, commissions and other agents."[1] JPS and the City stipulated that the City made continuing inquiries regarding the disposal of the incinerator residue as soon as it discovered that the Khian Sea left the port of Philadelphia.

The City refused to pay JPS for their services because it did not properly dispose of the incinerator waste in compliance with applicable laws and regulations.[2] The City contends that proper disposal was a condition precedent to its duty to pay for JPS's services. JPS argues that the contract provisions governing the manner of waste disposal were mere promises of performance, the breach of which would only entitle the City to damages for harm actually suffered. JPS sued on the basis that the City's failure to pay was a breach of their contract, because JPS fulfilled its duty to haul and dispose of waste.

■ A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P., Rule 1035, 42 Pa.C.S.A. On appellate review, an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion. *Western Penn Power Co. v. Piatt*, 405 Pa.Super. 467, 592 A.2d 1306 (1991).

1. The United States is a signatory to the Convention on the Prevention of Marine Pollution by Dumping of Wastes and other Matter, also known as the London Dumping Convention, which restricts ocean dumping of incinerated materials. 26 U.S.T. 2403.

2. The City refused to pay $630,005 for the hauling and disposal of the Khian Sea's cargo. The total value of the parties' contract was $6 million of which the City paid $5.7 million for work properly executed.

The trial court found that there was no material issue of fact concerning the City's duty to pay for the ash hauled by the Khian Sea, because JPS was unable to provide any evidence that it complied with the contract terms regarding environmentally safe disposal. On the other hand, the City presented evidence that the Khian Sea's cargo was improperly jettisoned into the ocean, in violation of the parties' contract and environmental regulations.

The City presented evidence that JPS sued Amalgamated Shipping for fraudulent misrepresentation and breach of contract in connection with the Khian Sea subcontract. *Joseph Paolino & Sons, Inc. v. Amalgamated Shipping Corp.*, E.D.Pa. No. 87–1777, 1989 WL 79743 filed 7/17/89. Pending resolution of that suit, JPS admitted that it "obtained a preliminary injunction ... for the purpose of attempting to control the conduct of Amalgamated and its various agents and avoid the prospect of ocean dumping of the residue." City—JPS Stipulation number 58. In addition, the Khian Sea was purchased during its world incinerator ash tour from Lily Navigation by Romo Shipping Corporation, on or about September 8, 1988. The Khian Sea was renamed the "Felicia". Romo Shipping informed Amalgamated Shipping that

cargo of ash of Felicia ex Khian Sea has been discharged. Owners will not advi[s]e location because world press and waste monopolies would probably have instigated usual false propaganda against ship and cargo creating frustration of discharge. For your information[,] owners negotiating sail[ing] vessel to far eastern interest and will have no further information of its operational status.

R.R. at Exhibit Y.

Moreover, counsel for JPS informed a City solicitor by letter that

it now must be assumed by [JPS] that ocean dumping of the residue is exactly what has occurred and more specifically that the incinerator residue was "discharged" into the Indian Ocean. According to several sources the vessel still had a cargo of incinerator residue on board when it departed

Yugoslavia and then it transited the Suez canal. It was empty when it arrived in the jurisdiction of Singapore, and it had been denied entry to port in Sri Lanka.

R.R. at Exhibit N, dated 12/21/88.

 The trial court found that the contract terms which provided for the manner of disposal were clear and unambiguous conditions precedent to the City's duty to pay. No particular language is required to create a condition precedent. *American Leasing v. Morrison Co.,* 308 Pa.Super. 318, 454 A.2d 555 (1982). Furthermore, the purpose of a condition is determined according to the general rules of contract interpretation. *Estate of Barilla,* 369 Pa.Super. 213, 535 A.2d 125 (1987). The trial court found the City's interpretation, that payment was triggered by safe and legal disposal of the incinerator waste, to be reasonable and fair. The City's concern with insulating itself from the extensive liability which would result from violating state, federal, and treaty regulations against ocean dumping is manifest. Furthermore, documentary evidence strongly suggested that the incinerator ash was improperly ejected into the ocean. JPS's argument to the contrary is essentially that the incinerator ash will never be located, and therefore no actual damage for breach of a promise ever accrues. After a careful review of the record and the relevant law in this case, we find that the trial court's rejection of JPS' unreasonable interpretation was not an abuse of discretion. We affirm the trial court's grant of summary judgment of JPS claim for payment for the Khian Sea cargo.

Order affirmed.